**Betty L. GOLD, on behalf of the Susque-hanna Corporation, Plaintiff,**

v.

**Arch C. SCURLOCK, Arthur W. Sloan, Daniel McBride, Glenn L. Sloane, Keith E. Rumbel and the Susquehanna Corporation, Defendants.**

**Civ. A. No. 4990–A.**

United States District Court, E. D. Virginia, Alexandria Division.

April 6, 1971.

---

20. *Id.* at 95, 98.

See also D.C., 290 F.Supp. 926.

Ewell G. Moore, Jr., Fairfax, Va., Sidney B. Silverman, New York City, for plaintiff.

A. Francis Vitt, Jr., Arlington, Va., for Keith E. Rumbel.

Louis Koutoulakos, Arlington, Va., Cleary, Gottlieb, Steen & Hamilton, New York City, for the Susquehanna Corp.

Edmund D. Campbell, Arlington, Va., Benjamin W. Dulany, Fairfax, Va., Stuyvesant Keith Bearns, Washington, D. C., for Arthur W. Sloan and the Susquehanna Corp.

William W. Koontz, Alexandria, Va., Hale, Russel & Stentzel, New York City, for Arch C. Scurlock and Daniel McBride.

Edmund D. Campbell, Arlington, Va., Courts Oulahan, Washington, D. C., for Glenn L. Sloane.

## MEMORANDUM OPINION

OREN R. LEWIS, District Judge.

In this stockholder's derivative suit the plaintiff seeks reimbursement on behalf of The Susquehanna Corporation for short-swing profits which she says were realized by the defendants in violation of Section 16(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78p).[1]

The facts are essentially undisputed. Atlantic Research Corporation (ARC) was a public corporation whose stock was traded on the American Exchange —Defendant Arthur W. Sloan was ARC's chief executive officer and chairman of the board—He owned 16.52% of ARC's common stock—Defendant Arch C. Scurlock was a member of ARC's board of directors—He owned 19.68% of ARC's common stock. Defendants Glenn L. Sloane, Daniel McBride and Keith E. Rumbel were officers of ARC—each owned less than 10% of ARC's common stock.

---

1. (a) Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered on a national securities exchange, or who is a director or an officer of the issuer of such security, shall file, at the time of the registration of such security or within ten days after he becomes such beneficial owner, director, or officer, a statement with the exchange. * * *

(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. * * This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved. * * *

On August 2, 1967 ARC's board of directors announced that an offer for merger with The Susquehanna Corporation (SC)[2] had been accepted in principal. The basic provisions of this merger offer were outlined in a memorandum dated July 31, 1967 from Korholz, chairman of SC's board of directors, to Arthur Sloan. One of the provisions provided that SC would issue newly created preferred stock with a value of not less than $36.00 for each share of ARC common.

The merger was approved by the shareholders of both companies November 27, 1967—effective December 4, 1967.

Scurlock has served as a director of SC since December 1, 1967. He acquired more than 10% of the outstanding preferred stock of SC on December 4, 1967 in exchange for his ARC holdings —He sold 36,000 shares of his original holding of 380,070 shares of SC preferred between December 20, 1967 and January 17, 1968.

Arthur Sloan has served as a director and chief executive officer of SC since December 1, 1967—He acquired more than 10% of the outstanding preferred stock of SC on December 4, 1967 in exchange for his ARC holdings—He sold 1,000 shares of SC preferred on December 27, 1967 and another 1,000 shares on January 18, 1968.

Rumbel, Glenn L. Sloane and McBride served as officers of SC after the merger. McBride sold 300 shares of the SC preferred he had acquired in exchange for ARC stock within six months from the date of the merger. Rumbel and Glenn Sloane sold, within six months of the merger, 6,300 and 500 shares, respectively, of the SC preferred they had acquired in exchange for their ARC stock.

The plaintiff wants the Court to require the defendants to turn back to the corporation the profits made from the sale of this stock.

This is the type of transaction Section 16(b) seeks to prevent. See Newmark v. RKO, 425 F.2d 348 (2nd Cir. 1970).

" * * * That RKO's heart may have been pure and its motivation noble matters not. The significant factor is whether RKO *could have* reaped a speculative profit from the 'unfair use of information * * * obtained * * * by reason of [its] relationship to [Central].' "

▮ It is the potential for abuse, not the actual abuse, at which Section 16(b) is aimed.

In Newmark the court held that fixing the purchase price for the stock of the corporation dissolving in the merger before the details of the proposed merger became public knowledge opened the door to possible speculative abuse—The fact that the details, including the purchase price of the stock in the dissolving corporation, were made public the day after consummation did not eliminate the possibility of abuse.

▮ The same situation existed here —The defendants were aware on July 31, 1967 (Monday) of the market value of preferred stock SC would issue in exchange for their ARC common. This was not made public until August 2, 1967 (Wednesday). Thus the defendants had a 48-hour advantage over the general public for speculation. Clearly this presented the defendants with the opportunity for abuse, which Section 16(b) was designed to prevent.

For liability to attach via 16(b) there must be (1) a purchase and (2) a sale of securities (3) by one who owns more than 10% of any one class of the issuer's securities or who is a director or officer of the issuer, (4) within a six-month period.

The transactions here made all occurred within a six-month span commencing December 4, 1967—The defendants acquired their SC preferred in exchange for their ARC common. They disposed

of the SC preferred in question on the open market.

▅ The Court here holds that the initial exchange of ARC common for SC preferred constitutes a purchase for 16(b) purposes—The "economic equivalence exemption" established by Blau v. Lamb, 363 F.2d 507 (2nd Cir. 1966), does not apply where the securities received reflect ownership rights in a newly merged corporation (see Newmark, supra).

That disposal of stock on the open market is a sale is beyond question.

Arthur Sloan and Scurlock, in addition to being directors of SC prior to the merger, became 10% beneficial owners of a class of equity securities upon exchange of their ARC common for SC preferred stock.

▅ It is well settled that the prohibition of Section 16(b) embraces transactions made by such beneficial owners. See Stella v. Graham-Paige Motors Corp., 232 F.2d 299 (2nd Cir. 1956), where the court held that Graham-Paige, which held six per cent of Kaiser-Frazer stock, became the "beneficial owner" of more than 10% at the very moment it purchased additional shares—A sale there within six months from that time subjected Graham-Paige to liability.

▅ Arthur Sloan and Scurlock, being both directors and beneficial owners of SC preferred stock, are clearly "insiders"—Thus, having fulfilled all the requirements for 16(b) liability, they will be required to turn back the profits made on the sale of the stock in question.

The Court finds that the remaining three defendants were officers of SC at the time of their merger acquisition of SC stock—Even so, these defendants claim their offices were merely titular and, as such, they were not privy to inside information.

▅ Rumbel's duties as an officer of SC (and as an officer of ARC prior to the merger) were mere staff functions —routine administrative chores—He ceased being an important cog in the ARC machine in May of 1966—His duties were not at all reflective of the title that he held in ARC before, or in SC after, the merger. Being a corporate officer without portfolio does not per se make him an "insider" as contemplated in Section 16(b)—and the Court so finds as to Rumbel.

McBride was a vice president of ARC before, and a vice president of SC after, the merger, as was defendant Glenn Sloane. McBride served as the manager of the Ordnance Division and Sloane served as the manager of R & G Sloane, a subsidiary of ARC before, and a subsidiary of SC after, the merger.

▅ Although there was no evidence indicating that McBride or Sloane had an opportunity to avail themselves of the inside details of the merger arrangement—Section 16(b) does not so require —They were corporate officers both in name and in fact—Their duties and responsibilities were equal to their titles. As corporate officers who purchased and sold corporate stock within a six-month period—they too will be held liable for any profits realized from the sale of their stock in question.

Subsequent to trial, counsel for the defendants raised the argument that the SC preferred stock was not "registered" pursuant to Section 12" of the Securities Exchange Act as required by Section 16(b) before the sanctions imposed therein can apply.

▅ The record here made discloses that the SC preferred was exchanged for ARC common on December 4, 1967. Although not registered until December

12, 1967, SC preferred was at all times convertible into SC common which had been registered since July 2, 1965.

"* * * [S]ince § 16(b) does not expressly require that the stock held by an officer or director of a corporation must be registered on a national securities exchange at the time it was purchased as well as when it was sold, we will not infer such a requirement contrary to the manifest statutory purpose. * * *" Perfect Photo, Inc. v. Grabb, 205 F.Supp. 569 (E.D.Pa.1962).

The court there held that registration at the time of sale is sufficient for Section 16(b) purposes.

■ The plaintiff contends damages should be calculated using the market value of ARC common at the time of the merger. The defendants contend that it should be the value of The Susquehanna Corporation preferred at the time of the merger calculated according to a formula set forth in the merger agreement.

In Smolowe v. Delendo Corporation, 136 F.2d 231 (2nd Cir. 1943), the court states, with regard to the determination of "profits realized" under a 16(b) transaction,

"The statute is broadly remedial. * * Recovery runs not to the stockholder, but to the corporation. We must suppose that the statute was intended to be thorough-going, to squeeze all possible profits out of stock transactions. * * *"

Adopting this standard, the damages here should be computed by using the market price of ARC on the day of merger, together with accrued interest at six per cent per annum.

The attorney for the plaintiff should forthwith prepare an appropriate order in accordance with this memorandum opinion, submit the same to counsel of record for the defendants for approval as to form and as to the amount due the corporation from each defendant, and then to the Court for entry.