**Edward SCHIMMEL, Plaintiff,**

v.

**Samuel H. GOLDMAN and Banner Industries, Inc., Defendants.**

**71 Civ. 600.**

United States District Court, S. D. New York.

Jan. 8, 1973.

12. 412 F.2d 583 (10 Cir. 1969).

13. *Id.* at 585.

14. Advisory Committee's Notes to the Proposed Amendment of Rule 15(c), 39 F.R. D. 82–84 at 83.

15. 12 P.S. § 34.

Garwin & Bronzaft, New York City, for plaintiff Edward Schimmel by Bert Bronzaft, New York City.

Whitman & Ransom, New York City, for defendant Samuel H. Goldman by Norman G. Sade, New York City.

Baer & McGoldrick, New York City, for defendant Banner Industries, Inc. by John McLaughlin, New York City.

Michael Macchiaroli, Washington, D. C., for S. E. C., amicus curiae.

BAUMAN, District Judge.

This is an application pursuant to Rule 23 of the Federal Rules of Civil Procedure seeking the Court's approval of a stipulation of settlement discontinuing this § 16(b) action in return for defendant Goldman's payment of approximately 72% of the maximum possible recovery. Notice of a hearing on the merits was published in the New York Times and sent to the Regional Office of the Securities and Exchange Commission in accordance with an order of this Court. Though no shareholder of defendant Banner Industries, Inc. ("Banner") has objected to the settlement, the SEC has submitted an *amicus curiae* memorandum opposing it on the grounds

that "the defenses set forth in the moving papers . . . are too weak to justify the substantial discount at which . . . [the] claim is proposed to be settled."

Edward Schimmel, a shareholder of Banner, brought this action on behalf of Banner pursuant to § 16(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78p(b),[1] to recover "profits" allegedly derived by defendant Goldman, a vice president of Banner during all relevant times, as a result of his sale and subsequent purchase of Banner common stock pursuant to an option within a six-month period.

The facts are not in dispute. Briefly, on July 11, 1966 Banner granted Goldman an option to purchase 15,000 shares of its common stock at $1.625 per share. One third of the total option (5,000 shares) were exercisable on or after July 11, 1967, a second third exercisable on or after July 11, 1968, and the final third exercisable on or after July 11, 1969. Any portion of the option not exercised in the first or second year could be carried forward.

In February, 1968 Goldman purchased 5,000 shares pursuant to the option. This transaction, however, is not directly relevant to the present suit.

The transactions giving rise to § 16(b) liability began on December 27, 1968. From that date to January 10, 1969, Goldman sold 10,000 shares at a net price of $150,365.80. Shortly thereafter, he wrote to Banner's counsel seeking to exercise the balance of his option (10,000 shares). Although the accrual date of the option for the final third of the shares had not arrived, Banner's counsel responded giving instructions as to how the $16,250.00 exercise price should be remitted. Goldman paid for the option shares on May 12, 1969.

It is undisputed that Goldman's maximum liability for these transactions is $83,490.80. The Court's own calculations, set out in the margin,[2] confirm

1. Section 16(b) provides:

"(b) For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) within any period of less than six months, unless such security was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer, irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction of holding the security purchased or of not repurchasing the security sold for a period exceeding six months. Suit to recover such profit may be instituted at law or in equity in any court of competent jurisdiction by the issuer, or by the owner of any security of the issuer in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter; but no such suit shall be brought more than two years after the date such profit was realized. This subsection shall not be construed to cover any transaction where such beneficial owner was not such both at the time of the purchase and sale, or the sale and purchase, of the security involved, or any transaction or transactions which the Commission by rules and regulations may exempt as not comprehended within the purpose of this subsection."

2. Goldman's maximum liability is computed by subtracting his purchase price from the proceeds of the sale of his stock. Thus:

Proceeds from sale of 10,000 shares .......... $150,365.80
(minus)
Cost of the first 5,000 shares obtained in May, 1969 (applying the "Steinberg" rule) ........ $34,375.00
and
Cost of remaining 5,000 shares obtained in May, 1969 (applying SEC Rule 16(b)-6) ..32,500.00    66,875.00

Maximum recoverable profit ................... $83,490.80

the accuracy of this figure. The proposed settlement provides for the payment by defendant of $60,000. The sole question presented therefore, is whether Goldman's defenses to this action are sufficiently meritorious to justify the discount from the maximum recovery.

■■ At the outset, it should be observed that this Court favors settlements where the plaintiff's right to recover is subject to serious questions of fact or law. See e. g. Zerkle v. Cleveland-Cliffs Iron Company, 52 F.R.D. 151 (S.D.N.Y.1971). Indeed, in cases such as this a compromise will be approved unless it is unfair on its face. Glicken v. Bradford, 35 F.R.D. 144 (S.D.N.Y. 1964).

In my view, the settlement agreement here represents a good faith effort to balance the plaintiff's likelihood of success against the serious questions of law which stand in his way. Defendant Goldman has raised two substantial defenses. First, he argues that the recoverable profits in this action are limited to $40,365.80 by the "Steinberg" rule.[3] Second, he claims that he cannot be treated as an "officer" within the meaning of § 16(b) because he did not function as one.

## I. Computation of § 16(b) Liability in the Option Context.

In the option context, the usual rule of computing profits, pairing transactions and subtracting the purchase price from the proceeds of the sale, is unduly harsh. Section 16(b) was designed to "squeeze out" only short-swing profits, and the application of a rule which computes profits by subtracting the exercise price of the option from the proceeds of the sale would unjustly penalize the defendant by taking away the long term increment in the value of his option which could in no way represent short-swing or insider profits. To avoid this

inequitable result, the Second Circuit has adopted a special rule for computing § 16(b) liability in the option context. See Steinberg v. Sharpe, 95 F.Supp. 32 (S.D.N.Y.), aff'd per curiam, 190 F.2d 82 (2d Cir. 1951). Under Judge Medina's familiar analysis in *Steinberg,* the purchase price of stock bought pursuant to an option is considered as equivalent to the fair market value of the stock on the date on which the option was first exercisable.

The SEC argues that because Goldman exercised his option as to the last 5,000 shares before the July 11, 1969 accrual date, he should not get the benefit of the *Steinberg* rule as to those shares.

The defendant on the other hand argues that such a technical application of the rule defeats the purpose of the rule, i. e., to include within the defendant's cost so much of the value of the option as represents the long term incremental value of the stock.

This point is well taken. The thrust of *Steinberg* was to create a technique whereby § 16(b) liability would not include the long term incremental value of the stock which could not represent short-swing profits. This purpose would be defeated by applying the rule contended for by the SEC.

The SEC further argues that even if the *Steinberg* rule is applied to the entire 10,000 shares as defendant suggests, the damages will still be $60,990.80 using as a basis the $11.00 per share value on the accrual date of July 11, 1969. This reasoning is not persuasive. Nothing happened on July 11, 1969; the parties mutually amended the option to permit Goldman to purchase the remaining 10,000 shares on May 12, 1969. If the *Steinberg* rule is to be applied to all of these shares, and I express no such opinion, the value of the option should be computed as of May 12, 1969 when Goldman actually paid for the

3. Steinberg v. Sharpe, 95 F.Supp. 32 (S.D.N.Y.) aff'd per curiam, 190 F.2d 82 (2nd. Cir. 1951).

stock. By chance, this date happens to be most favorable to the defendant, resulting in damages of $40,365.80,[4] an amount substantially below the amount offered in settlement.

Goldman's computation theory is certainly reasonable albeit there is no precedent directly supporting it. Therefore, I find that the situation here is one in which plaintiff could not be certain of a 100% recovery after trial. Indeed, it may not be amiss to remark after a lifetime of litigation that I have rarely, if ever, encountered one.

## II. The Definition of "Officer" for Purposes of § 16(b).

On first impression, it would seem that a defendant who consistently characterizes himself as a corporate officer in reports filed with the SEC should not be able to deny that he was in fact an officer for purposes of avoiding § 16(b) liability. This impression is strengthened by Rule 3b–2, 17 C.F.R. § 240.3b–2, which defines "officer" for purposes of the 1934 Act to mean president, vice president, treasurer, secretary, comptroller, or any other person who performs the functions of one of these officers. In this case, it is not disputed that Goldman submitted several Form 4's, the reporting document required by § 16(a), 15 U.S.C. § 78p(a),[5] describing himself as a Vice President of Banner. This notwithstanding, Goldman contends that he would not be foreclosed from arguing at trial that his position was merely titular, that he had no policy making functions or access to inside information, and thus was not an officer for purposes of § 16(b).

The SEC has expressed the view that there is no conceivable merit to this argument and that if a "person wishes to enjoy the prestige of an office, he shares its responsibilities under Section 16." This position, however, has not been adopted by this Circuit.

In Colby v. Klune, 178 F.2d 872 (2nd Cir. 1949), an action based upon § 16(b) brought by a shareholder of Twentieth Century-Fox against an insider, the District Court granted summary judgment for plaintiff, but the Second Circuit reversed because the defendant's allegation that he was not in fact an officer raised material questions of fact. Judge Frank questioned the validity of Rule 3b–2 but noted that even if the SEC had statutory authority to issue the Rule and bind the Courts:

". . . [t]here remains much room for inquiring into the facts at a trial. For the functions of a 'vice-president' or 'comptroller' are not so well settled as to be self-evident, and there is need for evidence concerning those func-

4. On May 12, 1969, Banner's common stock sold for a low of $15⅛ on the American Stock Exchange. Using $15.125 as the cost basis for 5,000 shares, the recoverable profit would be $40,365.80.

5. Section 16(a) provides:
   "(a) Every person who is directly or indirectly the beneficial owner of more than 10 per centum of any class of any equity security (other than an exempted security) which is registered pursuant to section 78*l* of this title, or who is a director or an officer of the issuer of such security, shall file, at the time of the registration of such security on a national securities exchange or by the effective date of a registration statement filed pursuant to section 78*l*(g) of this title, or within ten days after he becomes such beneficial owner, director, or officer, a statement with the Commission (and, if such security is registered on a national securities exchange, also with the exchange) of the amount of all equity securities of such issuer of which he is the beneficial owner, and within ten days after the close of each calendar month thereafter, if there has been a change in such ownership during such month, shall file with the Commission (and if such security is registered on a national securities exchange, shall also file with the exchange), a statement indicating his ownership at the close of the calendar month and such changes in his ownership as have occurred during such calendar month."

tions. Under that Rule as we interpret it, it does not matter whether or how the by-laws of this particular company defines the duties of such officers. The question is what this particular employee was called upon to do in this particular company, *i. e.*, the relation between his authorized activities and those of this corporation." 178 F.2d at 875.

Interestingly, the SEC did not argue in Colby v. Klune, as it does here, that Rule 3b–2 forecloses any inquiry into what the defendant did but rather argued:

"... it is significant that the employee has or has not 'responsibility for the policy of at least a substantial segment of the corporation's affairs' and participates 'in executive councils of the corporation as an officer.'" 178 F.2d at 875.

Thus, neither the Second Circuit nor the SEC were willing to assume that Rule 3b–2 foreclosed the defendant from arguing that, although given the title of an officer, he did not perform the policy making functions or have access to inside information which characterize an "officer" for purposes of § 16(b). Judge Frank concluded his decision with the direction to the District Court to take testimony on this issue.

Neither the parties' research nor my own discovered any decision in this Circuit which holds Rule 3b–2 valid or invalid or interprets it further than Colby v. Klune.[6]

The two California District Court opinions cited by the SEC, Lockheed Aircraft Corp. v. Campbell, 110 F.Supp. 282 (S.D.Calif.1953); Lockheed Aircraft Corp. v. Rathman, 106 F.Supp. 810 (S.D.Calif.1952), hold Rule 3b–2 valid, but these holdings are of little precedential value because the issue in each case was whether an assistant treasurer, a position not included in the Rule's definition of "officer", was an insider for purposes of § 16(b).

In the most recent decision discussing this problem, Gold v. Scurlock, 324 F. Supp. 1211 (E.D.Va.1971), appeal pending, (4th Cir. 71–21181), the District Court adopted Judge Frank's suggestion and made an inquiry into the defendants' duties as well as their corporate titles. Judge Lewis concluded that "Being a corporate officer without portfolio does not per se make him an 'insider' as contemplated in Section 16(b)." 324 F.Supp. at 1215. He found that defendant Rumbel, an officer of a division and not the parent corporation itself, was not an insider. Defendants McBride and Sloane, however, were clearly corporate vice presidents and served as managers of subsidiaries. Judge Lewis found them to be "corporate officers both in name and in fact—their duties and responsibilities were equal to their titles." 324 F.Supp. at 1215.

Thus, defendant Goldman would be free at trial to raise the issue of whether he was an insider despite the Form 4 reports and Rule 3b–2.

■ In any event, the question for this Court is not whether Goldman was or was not a corporate officer, but whether this argument is substantial and justifies some discount from the maximum recovery. For in passing upon the fairness and adequacy of a derivative settlement, "the Court does not try out the disputed issues. The compromise was agreed to for the purpose of avoiding just that." Schleiff v. Chesapeake & Ohio Railway Company, 43 F. R.D. 175, 178 (S.D.N.Y.1967).

---

6. There is dictum in Ellerin v. Massachusetts Mutual Life Ins. Co., 270 F.2d 259, 265 (2nd Cir. 1959), a § 16(b) action against an insurance company which bought and shortly thereafter sold securities which were of different series, to the effect that "corporate labels are not necessarily binding on the court," citing as authority Colby v. Klune, but this dictum dealt with the labels "series" and "class" and not corporate officers.

In conclusion, I find that the settlement is fair and reasonable. It represents approximately 72% of the maximum recovery sought by the plaintiff. When balanced against the substantial hazards and additional expenses of a trial, it appears to be a fair settlement. The defendant's theory of computing profits is novel and substantial. His alternative defense is also substantial and, if successful, would defeat any recovery by the corporation.

As the Court noted in Zerkle v. Cleveland-Cliffs Iron Co., supra, shareholder derivative litigation is "notoriously difficult and unpredictable." 52 F.R.D. at 159. For this reason, settlements are favored.

The proposed stipulation of settlement is approved.