Ilse **ZIMMERMAN** and Irma Bildstein and Belle M. Cohen and Richard Ash, individually and derivatively on behalf of Martin Marietta Corporation, Appellees,

**and**

Charlotte Horowitz, on behalf of herself and all others similarly situated as to Counts I and II, and in the right of Martin Marietta Corporation as to Counts III and IV, Appellant,

v.

Griffin B. **BELL**, Frank X. Bradley, John J. Byrne, A. James Clark, James L. Everett, III, Frank M. Ewing, William W. Hagerty, John L. Hanigan, Charles E. Hugel, Melvin R. Laird, Thomas G. Pownall, J. Donald Rauth, David C. Scott, Eugene M. Zuckert, John Doe, I, John Doe, II, John Doe, III, John Doe, IV, John Doe, V, John Doe, VI, John Doe, VII, John Doe, IX, John Doe, X, John Doe, XI, John Doe, XII, John Doe, XIII, John Doe, XIV, John Doe, XV, John Doe, XVI, John Doe, XVII, John Doe, XVIII, John Doe, XIX, John Doe, XX, John Doe, XXI, John Doe, XXII, John Doe, XXIII, John Doe, XXIV, John Doe, XXV, John Doe, XXVI, John Doe, XXVII, John Doe, XXVIII, Martin Marietta Corporation, Anne Schwartz, Jean Braun, Laurence J. Adams, Charles H. Leithauser, and David S. Levine, Appellees.

No. 85–2027.

United States Court of Appeals, Fourth Circuit.

Argued April 9, 1986.

Decided Sept. 8, 1986.

See also 585 F.Supp. 512.

Kurt Hunciker, Sheldon D. Camhy, Allan R. Tessler, Shea & Gould, Jules Brody, Stull, Stull & Brody, New York City, J. Michael McWilliams, William C. Sammons, John B. Isbister (Tydings & Rosenberg, Baltimore, Md., on brief), for appellant.

Robert C. Myers, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, George Beall (Miles & Stockbridge, Baltimore, Md., on brief), for appellees the Directors Martin Marietta Corp.

Irving Bizar, Bizar, D'Alessandro, Shustak & Martin, Bruce E. Gerstein, Garwin, Bronzzaft & Gerstein, New York City (Wartzman, Rombro, Rudd & Omansky, P.A., Baltimore, Md., on brief), for appellees Ilse Zimmerman, et al.

Karen M. Barry, Frank H. Menaker, Jr., Bethesda, Md., Vice President and Gen. Counsel (Martin Marietta Corp., on brief), for appellee Martin Marietta Corporation.

Before WIDENER, ERVIN and WILKINSON, Circuit Judges.

WILKINSON, Circuit Judge:

This appeal arises out of Bendix Corporation's 1982 attempt to take over Martin Marietta Corporation. Charlotte Horowitz,

alleging securities fraud, filed a class action against the directors of Martin Marietta on behalf of herself and other shareholders of that corporation. The district court denied Horowitz' motion for class certification. The directors of Martin Marietta offered judgment to Horowitz in the amount of $3,281.25 plus costs, the maximum amount of damages claimed by Horowitz individually in her answers to interrogatories. Horowitz rejected the offer, and the district court granted defendants' motion to dismiss the individual claims because there was no longer a case or controversy. In a related case, the district court approved a proposed settlement of shareholder derivative actions brought by Ilse Zimmerman and Belle Cohen.

Horowitz now appeals the denial of class certification, the dismissal of her individual claims, and the approval of the settlement. We affirm all three rulings of the district court.

### I.

The background of this litigation is complex and lengthy; it has been set out in some detail in *Martin Marietta Corp. v. Bendix Corp.*, 547 F.Supp. 533 (D.Md.1982) and *Martin Marietta Corp. v. Bendix Corp.*, 549 F.Supp. 623 (D.Md.1982). Briefly, Bendix made a tender offer for Martin Marietta's stock. Martin Marietta responded with a tender offer for Bendix' stock. Allied Corporation and Bendix agreed to a merger, and Allied, Bendix, and Martin Marietta negotiated their way to an accord. Martin Marietta and Bendix each agreed to refrain from acquiring control of the other. Allied bought the Bendix stock owned by Martin Marietta, and sold most of the Martin Marietta stock acquired by Bendix to Martin Marietta, although Allied ended up with approximately 39% of the outstanding Martin Marietta stock. A "Standstill Agreement" provided, among other things, that Allied would vote its Martin Marietta shares as the Martin Marietta board recommended.

All of this activity produced a flurry of lawsuits, including a number of shareholder derivative suits and the class action brought by Horowitz. Specifically, the shareholders alleged that the Martin Marietta directors had run up a gigantic debt of $900 million to finance the counter offer; that they had made misrepresentations to shareholders in the recommendation that they not tender their shares to Bendix; and that the agreement with Allied shortchanged the shareholders while ensuring that the directors would remain in control.

Horowitz originally brought both a shareholder derivative suit and a class action. The district court found that the assertion of both claims created an impermissible conflict of interest for Horowitz. If Horowitz proved that the directors and officers had acted illegally, the proposed class would compete with Martin Marietta for recovery of damages. Therefore, the district court required Horowitz to choose between the class action and the derivative suit. Horowitz elected to pursue the class action.

### II.

■ Horowitz' first contention is that the district court erred in denying her motion for class certification. Horowitz sought certification of a class consisting of all common shareholders of Martin Marietta at any time on or after August 25, 1982 (the date of the public announcement of the tender offer by Bendix), who had not sold their stock before September 24, 1982 (the date of the public announcement of the Standstill Agreement). Horowitz alleged that the failure of the directors to disclose material facts caused class members to keep their Martin Marietta stock and refuse to tender to Bendix, to their economic disadvantage.

Preliminarily, as the district court noted, there are problems with the class as Horowitz has defined it, in part because of the specific wrongdoings she alleges. Horowitz alleges that the defendants wrongfully converted to themselves both a September 23, 1982 offer by Allied to acquire remaining Martin Marietta stock and a September 21, 1982 offer by Bendix. In addi-

tion, Horowitz contends that defendants omitted material facts from the Schedule 14D-9, the solicitation registration statement issued August 31, 1982.

A finding on each of these claims depends on an individual showing of ownership on specific dates. Horowitz' proposed class consists of anyone who owned stock in Martin Marietta on September 24, 1982. To be injured by defendants' failure to accept Allied's offer, the shareholder must have owned stock on September 23. Likewise, only a shareholder who owned stock on September 21 could be injured by the alleged conversion of the Bendix offer. Since the tender offer expired on September 20, only those people who owned stock before that date could have been injured by the alleged omissions in the Schedule 14D-9. The course of corporate activity in August and September 1982 was a frenetic one, and there may be significant numbers of shareholders in Horowitz' purported class who simply were not injured by the misdeeds she recites. Finally, the definition of the class excludes a group of people who might have been injured—those who had sold their shares by September 24, but owned them before September 20, or on September 21 or 23. Again, the class as Horowitz defines it overlaps only partially with the group of people who were actually injured if her allegations are correct. The various actions of which Horowitz complains—and the pace of activity during the period of which she complains—raise doubt as to whether questions common to the purported class exist. Fed.R.Civ.P. 23(a)(2).

In addition to noting the problems with the definition of the class, the district court denied certification for failure to satisfy the prerequisites of Fed.R.Civ.P. 23(b). "A court has broad discretion in deciding whether to allow the maintenance of a class action.... The determination of a district court that an action does not meet the requirement of a class action will not be disturbed unless it is clearly erroneous." *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348–49 (4th Cir.1976). *See also Lewis v. Bloomsburg Mills, Inc.*, 773 F.2d 561, 563–

64 (4th Cir.1985). We believe the district court did not abuse that discretion in refusing to certify this proposed class.

An action may be brought as a class action under Rule 23(b)(1) if individual adjudication of the controversy would prejudice either the party opposing the class, (b)(1)(A), or the class members themselves, (b)(1)(B). *Crasto v. Estate of Kaskel*, 63 F.R.D. 18, 21 (S.D.N.Y.1974). Defendants do not contend they would be prejudiced if the class were not certified. The danger of imposing "incompatible standards of conduct" on the party opposing the class is also not normally posed by a request for money damages. *Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1340 n. 10 (9th Cir.1976). Nor are we persuaded that prejudice to absent class members would result under Rule 23(b)(1)(B). The damages sought by plaintiff as an individual shareholder are small. Their recovery would hardly exhaust the amounts available to other injured parties. Nor would plaintiff's failure to recover preclude unnamed class members from bringing their own actions, especially those which, as the district court noted, "might rest on individual claims of reliance and injury not suffered by this plaintiff." The trial court properly observed that numerous courts have held that actions under the securities laws are not appropriate for class action treatment under Rule 23(b)(1). *See, e.g., Crasto v. Kaskel*, 63 F.R.D. 18; *Berley v. Dreyfus & Co.*, 43 F.R.D. 397 (S.D.N.Y. 1967).

Nor can Horowitz rely on Rule 23(b)(2), which requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class." The Advisory Committee Notes specify that this "subdivision does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." In this claim, Horowitz seeks essentially monetary relief, to be distributed pro rata to class members. We have held that subsection (b)(2) was limited to claims where the relief sought was pri-

marily injunctive or declaratory. *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594, 595 (4th Cir.1976).

Rule 23(b)(3) requires the court to find that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." That is not the case here. The parties estimate that the proposed class would have over 44,000 members. The media covered the Bendix-Martin Marietta tender offers extensively, and defendants contend that such public disclosure of much of the information allegedly omitted from the solicitation registration statement potentially places class members in very different circumstances.

■ To recover in an action for securities fraud, individual class members must demonstrate that the omitted information was not otherwise available to them. *See Zobrist v. Coal-X, Inc.*, 708 F.2d 1511 (10th Cir.1983). The availability of information may not be common to the class. Moreover, as the district court has noted, "[t]he extensive public disclosure of matters allegedly omitted ... raises the possibility that the defendants can establish a defense against individual class members because they may have acted recklessly in not ascertaining facts generally available." Because the extent of knowledge of the omitted facts or reliance on misrepresented facts will vary from shareholder to shareholder, the question of whether the omission was material might require an individual inquiry for each shareholder.

The possibility of such individualized determinations would impose an excessive managerial burden upon the district court. Fed.R.Civ.P. 23(b)(3)(D). When added to the different injuries suffered or avoided by putative class members, the potential for variance in shareholder circumstances becomes significant. "[W]hen individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." 7A C. Wright and A. Miller, Federal Practice and Procedure, § 1778 at

56. In this case, we cannot say that common questions predominate over individual ones, and we cannot conclude that certification under 23(b)(3) was required.

The district court properly looked beyond the superficial similarity of a putative class of Martin Marietta shareholders contesting corporate conduct in response to Bendix' tender offer. In concluding that none of the prerequisites of Rule 23(b) were satisfied in this case and that the action generally lacked the common characteristics required for class treatment, the court did not abuse its discretion in denying the requested certification.

### III.

■ Horowitz also seeks relief from the dismissal of her individual claims after defendants offered judgment. Since class certification had been denied, and defendants had offered Horowitz the full amount of damages ($3,281.25) to which she claimed individually to be entitled, there was no longer any case or controversy. *See Abrams v. Interco, Inc.*, 719 F.2d 23 (2d Cir.1983). Horowitz' personal stake in the outcome had disappeared, and federal courts do not sit simply to bestow vindication in a vacuum.

Horowitz nonetheless objects to the dismissal because defendants did not offer attorney fees, and because the offer of judgment ignores her "class/derivative" claim. Horowitz has no right to recover attorney fees for this individual securities action. Moreover, the district court was correct in rejecting Horowitz' complaint that the offer of judgment ignores her "class/derivative" theory. Horowitz claims that the shareholders are entitled to recover because the directors breached their fiduciary duty by entering into the Standstill Agreement. This is a derivative claim and, in general, recoveries in a derivative action belong to the corporation on whose behalf the suit is brought. *In re Pittsburgh and Lake Erie Railroad Co. Securities and Antitrust Litigation*, 543 F.2d 1058, 1068 (3d Cir.1976). *See also Waller v. Waller*, 187 Md. 185, 49 A.2d 449

(1946). Horowitz elected to bring a class action rather than a shareholder derivative suit. She *cannot now revive her derivative suit as a "class/derivative" claim.*[*]

### IV.

■ Finally, Horowitz objects to the district court's approval of the settlement of the derivative actions brought by Zimmerman and Cohen. The settlement provides, *inter alia,* that Martin Marietta will adopt a detailed statement of procedures to be followed in the event of a future tender offer or takeover bid. Another statement *governs conditions for termination and regrant of stock options for certain employees.* Notice of the proposed settlement was mailed to all shareholders of record. Only two shareholders objected. Horowitz filed an objection two weeks after the deadline, and someone who claimed to be a shareholder sent an unsigned letter, also after the deadline.

Approval of a derivative settlement is appropriate "if it fairly and adequately serves the interests of the corporation" on whose behalf it was brought. *Republic National Life Insurance Co. v. Beasley,* 73 F.R.D. 658, 667 (S.D.N.Y.1977). The matter is one for the discretion of the district court. The exercise of that discretion is presumptively correct, subject to reversal only where abused.

We find no such abuse here. The district judge possessed long familiarity with this complex litigation, and his judgment that the settlement was fair merits respect upon appeal. The court noted that there was "nothing to suggest that the settlement was reached prematurely, or that there was any collusion or fraud in the course of the litigation or the settlement negotia-

tions." Rather, it was reached "as a result of extensive arm's length negotiations" between competent attorneys.

Horowitz also challenges the adequacy of the settlement. As noted earlier, Horowitz is one of only two objectors, out of tens of thousands of shareholders. It would be rare for such minimal dissent to derail settlement of a derivative suit on grounds that the settlement afforded insufficient relief. *Shlensky v. Dorsey,* 574 F.2d 131, 148 (3d Cir.1978).

We likewise reject Horowitz' suggestion that the Statements of Policy offered by defendants in a derivative settlement are necessarily inadequate in the absence of some monetary relief. While monetary recovery may, of course, be an element of a derivative settlement, it is not the only element and "parties to the settlement of a shareholders' derivative action are ... permitted great freedom in shaping the form of the settlement consideration." *Maher v. Zapata Corporation,* 714 F.2d 436, 466 (5th Cir.1983). Influencing the future conduct of management may serve the interests of the corporation as fully as a recovery for past misconduct, and a settlement may be accepted "even though no direct monetary benefits are paid by the defendants to the corporation." *Id.* Here the Statement of Policy provides guidelines for future management responses to tender offers and takeover bids, the very situation that prompted these various complaints. While Horowitz dismisses those guidelines as "utter generalities," we think the district court was entitled to regard them otherwise. The policy provides some fourteen factors for Martin Marietta directors to consider in the event of future unsolicited tender offers without depriving

---

[*] Horowitz' reliance on *Matthews v. Headley Chocolate Co.,* 130 Md. 523, 100 A. 645 (1917) is misplaced. In that case, the usual rule that a derivative recovery goes to the corporation would have produced a windfall benefit for a limited new group of controlling shareholders who were not harmed by the original wrongdoing, and who may in fact have benefited from it by purchasing shares at a depressed price. In this case, any derivative recovery would be to the general benefit of Martin Marietta Corpora-

tion and hence to the many thousands of shareholders of that company. An attempt to prove a harmed class of shareholders under the *Headley Chocolate* rationale would encounter the very same difficulties of individualized injury which defeated the claim for class certification. There is, therefore, every reason to apply the usual rule that a derivative recovery goes to the corporation. Any injury which inured under the derivative theory was to the corporation and does not afford Horowitz a personal stake.

management of the discretion necessary to respond to unpredictable proposals and unforeseeable circumstances.

In considering the adequacy of the derivative settlement, the district court was also not remiss in assessing the derivative plaintiffs' prospects of prevailing at trial as slight. While the parties offer contradictory interpretations of every aspect of director defendants' conduct, the district court found that there was "little or no evidence uncovered in the course of discovery which would indicate that the defendants acted in bad faith or with the primary motive to retain control." Whether the directors acted through the counter offer and Standstill Agreement to entrench themselves in office or whether, as the directors argue, they acted to save the company from a seriously undervalued tender offer that threatened Martin Marietta's unique contribution to the aerospace industry is, at bottom, a matter of motive on which we feel disinclined to overturn the assessment of the district court. That court could rationally have concluded that defendants believed Bendix' offer was inadequate and that Bendix' inexperience in aerospace prime systems design and construction would have threatened Martin Marietta's contracts.

We cannot hold as a matter of law that every use of corporate resources to fight a takeover contravenes the presumption inherent in the business judgment rule. In some circumstances the continuation of present management may be of corporate benefit. In all cases, the business judgment rule creates the presumption that directors act in good faith. *Treadway Companies, Inc. v. Care Corp.*, 638 F.2d 357, 381–82 (2d Cir.1980). *See also Devereux v. Berger*, 264 Md. 20, 284 A.2d 605, 612 (1971). Twelve of the fourteen Martin Marietta directors here were outside directors, and the board sought and acted upon outside advice from an investment banker, Kidder, Peabody & Company, which it retained to evaluate acquisition proposals. While such factors may not alone be dispositive, decisions which reflect independent and professional advice serve to reduce the appearance of self-serving action. *Panter v. Marshall Field & Co.*, 646 F.2d 271, 294 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981). ("The presumption of good faith the business judgment rule affords is heightened when the majority of the board consists of independent outside directors.")

There is also some question whether plaintiffs could prove damages. As the district court has detailed, the market price of Martin Marietta shares began to rise after the inception of these lawsuits, and the company has realized a profit of approximately $33,000,000. Although Martin Marietta paid $49,800,000 in interest on the debt it incurred during the takeover battle, that debt has now been retired, and Martin Marietta has saved $59,000,000 on dividend payments on the Martin Marietta shares purchased from Allied/Bendix. While some of these developments may trace to the fortuities of a bull market or an unprecedented defense buildup, they nonetheless bear on the assessment of any ultimate recovery and hence on the adequacy of the derivative settlement.

"Settlements of shareholder derivative actions are particularly favored because such litigation is 'notoriously difficult and unpredictable.'" *Maher v. Zapata*, 714 F.2d at 455 (*quoting Schimmel v. Goldman*, 57 F.R.D. 481, 487 (S.D.N.Y.1973)). Settlement here is favored for the reasons that settlements generally are favored: disputes are resolved; the resources of litigants and courts are saved; and, in the case of a derivative action, management can return its attention and energy from the courtroom to the corporation itself. We address here only the narrow question of whether the district court abused its discretion in approving this settlement. We conclude that it did not.

For the foregoing reasons, the rulings of the district court are

AFFIRMED.