**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILBERT SKIPPER, JR.; MELVYN
CONNOR; WILLIAM INGRAM; DAVID
NEWMAN; ANTHONY BLOCKER;
MAURICE MATHEWS; W. KIRB
QUALLS, JR.; JOHN W. DALLAS, JR.;
DAVID JONES,
          *Plaintiffs-Appellants,*

          and

GREGORY CARSON; JERRY MUNGRO,
          *Plaintiffs,*

          v.

GIANT FOOD INCORPORATED; PETER
MANOS, in his official capacity;          No. 02-1319
SAMUEL THURSTON, in his official
capacity; MARIA MYERS, in her
official capacity; ROBERT HAYWOOD,
in his official capacity; DEBORAH
LILLY, in her official capacity; TOM
MAYNARD, in his official capacity;
CHRIS BALLADEMAS, in his official
capacity,
          *Defendants-Appellees,*

          and

UNITED FOOD & COMMERCIAL
WORKERS UNION, Local 400,
          *Party in Interest.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA 96-2882-JFM, CA-02-537-JFM, CA-92-538-JFM,
CA-02-539-JFM, CA-02-540-JFM, CA-02-541-JFM,
CA-02-542-JFM, CA-02-543-JFM, CA-02-544-JFM)

Argued: May 9, 2003

Decided: June 11, 2003

Before WILKINS, Chief Judge, and WILKINSON and
LUTTIG, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Jo Ann P. Myles, LAW OFFICE OF JO ANN P. MYLES, Largo, Maryland, for Appellants. Kumiki San Gibson, WILLIAMS & CONNOLLY, L.L.P., Washington, D.C., for Appellees. **ON BRIEF:** Robert P. Watkins, WILLIAMS & CONNOLLY, L.L.P., Washington, D.C., for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Plaintiffs, former and present warehouse workers at Giant Food, Inc., brought this putative class action against Giant Food and several

of its managers alleging hostile work environment and disparate treatment claims. The district court denied class certification and dismissed plaintiffs' claims on summary judgment. We affirm the judgment.

I.

This action was instituted by eleven current or former African-American employees of Giant Food, Inc. The plaintiffs alleged hostile work environment and disparate treatment claims under 42 U.S.C. § 1981, along with various other federal and state claims. Nine of the original plaintiffs are involved in this appeal.

The plaintiffs in this case each held different positions with Giant and each worked in one of several different Giant warehouses.[1] Because the exact circumstances of each employee's claims are different, we shall briefly summarize the group's allegations. Plaintiffs base their hostile work environment claims on the fact that there was racist graffiti in Giant warehouses, that some of plaintiffs' Caucasian co-workers used racial epithets, and that there were three incidents over a six-year period where Giant employees hung a noose in one of the warehouses. Plaintiffs base their disparate treatment claims on allegations that Giant disciplined plaintiffs more harshly for various workplace infractions than it disciplined Caucasian warehouse employees. Finally, plaintiffs allege that Giant discriminated against African-American vacation relief workers by hiring Caucasian workers with less seniority than the African-American plaintiffs into permanent positions.

Plaintiffs requested class certification, seeking to have two subclasses certified. Giant opposed class certification and moved for summary judgment. In recognition of the seriousness of the allegations, the district court delayed its decision on class certification until the parties had undertaken discovery and could thus provide a fuller record to the court. The court then denied plaintiffs' motion for class certification, finding that plaintiffs could not meet the commonality,

---

[1]The one exception is Plaintiff W. Kirb Qualls, Jr., who worked at Giant Store # 50.

typicality, and adequacy of class representation requirements under Fed. R. Civ. P. 23(a).

The district court then granted summary judgment in favor of Giant as to plaintiffs Wilbert Skipper, Jr., Melvyn Connor, William Ingram, David Newman, Anthony Blocker, Maurice Mathews, W. Kirb Qualls, Jr., John Dallas, Jr., David Jones, and Jerry Mungro. Plaintiffs filed a consolidated appeal.[2]

## II.

Plaintiffs appeal the district court's denial of class certification and seek to have two subclasses certified.[3] The first subclass consists of "[a]ll current, former and future African American persons who were permanent union employees employed by Giant and worked at its Distribution Warehouses, including but not limited to its Jessup, Landover and Bakery Warehouses during the period of 1980 - to present." This subclass alleges violations of Title VII through Giant's hiring, promotion, discipline, termination, and training practices, and by virtue of racial harassment and a hostile work environment. The second subclass consists of "[a]ll African American persons who are former, current and future vacation relief workers at Giant's Distribution Warehouses, including but not limited to Jessup, Landover and Bakery Warehouses who were rejected for permanent employment by Giant during the period of 1980 to present." This subclass alleges violations of Title VII with respect to Giant's hiring and promotion practices.

We apply a deferential standard of review to a district court's decision to grant or deny class certification. District courts retain "broad discretion in deciding whether to allow the maintenance of a class

---

[2]Plaintiff Jerry Mungro did not appeal the district court's decision.

[3]After all papers were filed in the district court and the parties had conducted oral argument, plaintiffs' counsel filed a supplemental memorandum in support of plaintiffs' motion for class certification in which counsel changed the definitions of the proposed subclasses. Finding that the memorandum had not been filed in a timely manner, the district court declined to address the amended subclasses and we decline to do so as well.

action." *Zimmerman v. Griffin*, 800 F.2d 386, 389 (4th Cir. 1986) (quoting *Roman v. ESB, Inc.*, 550 F.2d 1343, 1348-49 (4th Cir. 1976)). We thus review a district court's decision to deny class certification only for an abuse of discretion. *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

The district court did not abuse that discretion in determining that both of the proposed subclasses failed to satisfy the prerequisites to bringing a class action.[4] *See* Fed. R. Civ. P. 23. The first subclass encompassed all unionized warehouse workers spanning a period of sixteen years. The subclass thus involved employees from over a half dozen different warehouse facilities in four different cities. During the relevant time period, there were approximately 265 different positions devoted to Giant's warehousing, recycling, or manufacturing operations. And those operations were conducted through different departments and overseen by different supervisors in each facility. Moreover, plaintiffs purport to represent warehouse workers who suffered illegal discrimination in training, despite the fact that none of the named plaintiffs sought to bring such claims individually. The Supreme Court, however, has "repeatedly held that 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). Given the nature of the claims plaintiffs have pressed, the facts will vary widely from worker to worker in cases of disparate treatment, and they will vary widely from warehouse to warehouse in cases of a hostile work environment.

The second proposed subclass suffers from similar infirmities.

---

[4]Plaintiffs also argue that we should reverse the district court's refusal to certify the proposed classes because the district court allegedly decided the merits of the case before ruling on class certification. It is not clear from the record that the district court actually ruled on the merits of the summary judgment motion first. Moreover, Fed. R. Civ. P. 23(c)(1) requires only that the question of class certification be decided "as soon as practicable after the commencement of an action brought as a class action." Plaintiffs have not demonstrated that the district court ran afoul of this requirement.

Plaintiffs Dallas and Jones admit that personal qualifications play at least some role in the hiring of vacation relief workers for permanent positions. Their claims and those of the putative class members would thus involve individualized inquiries into whether each person was qualified for the particular position for which that person applied. For example, Dallas testified that during orientation, vacation relief workers were told that Giant would consider their individual production records in determining whom to hire for permanent positions. Thus for Dallas and others to succeed on their claims, they would have to demonstrate that their personal production records merited a permanent position.

Given the individualized nature of plaintiffs' claims in each subclass, we hold that the district court did not err in holding plaintiffs failed to satisfy the commonality and typicality requirements of Rule 23(a).

We also find no error in the district court's conclusion that adequacy of class representation was lacking in this case. *See* Fed. R. Civ. P. 23(a)(4). The district court noted that class counsel had made significant errors in this action, both of substance and form. The court further questioned counsel's financial ability to represent a class of this size, noting that plaintiffs' expert had already threatened to withdraw from the case and to file a lawsuit over the late payment of fees.

Finally, even if plaintiffs could satisfy the prerequisites to class certification under Rule 23(a), certification would still be improper in this case because plaintiffs cannot satisfy any of the Rule 23(b) criteria. Plaintiffs do request injunctive and declaratory relief. However they also seek damages in the amount of one hundred thirty-nine million four hundred thousand dollars ($139,400,000.00). Their case is more properly viewed as one for monetary relief. *See* Fed. R. Civ. P. 23(b)(2); *Zimmerman*, 800 F.2d at 389.

And plaintiffs also cannot satisfy Rule 23(b)(3). "Even if Rule 23(a)'s commonality requirement may be satisfied . . . the predominance criterion [under Rule 23(b)(3)] is far more demanding." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). The Rule 23(b)(3) inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. In

revising Rule 23 in 1966, the Advisory Committee noted that cases likely to present significant questions of damages, liability and defenses are "'ordinarily not appropriate'" for class treatment. *Id.* at 625 (quoting Adv. Comm. Notes, 28 U.S.C. App., p. 705 (2000)). Here again, the individualized measure of plaintiffs' claims for damages reinforces the district court's conclusion that questions affecting only individual members would predominate over common questions of law or fact. *See* Fed. R. Civ. P. 23(b)(3).

Given the disparate circumstances of the putative class members and the nature of relief plaintiffs seek, we hold that the district court's denial of class certification was not an abuse of discretion.

III.

Plaintiffs next argue that Giant maintained a racially hostile work environment in its warehouses. Like the district court, we recognize that "racial hostility existed between African-American workers and white workers at the Giant warehouses from 1980 to the time this suit was initiated in 1996." However, we also agree with the district court that none of the plaintiffs presented an issue of triable fact.

To sustain a cause of action for a racially hostile work environment, a plaintiff must show: 1) unwelcome harassment; 2) that the harassment was based on race; 3) that the harassment was so severe or pervasive that it altered the conditions of employment and created an abusive atmosphere; and 4) that there is some basis for imposing liability on the employer. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Courts look at the totality of circumstances to determine whether an environment is hostile or abusive, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

The allegations of the individual plaintiffs as to hostile work environment vary both in severity and specificity. We take up what seems the strongest of the claims in order to illustrate the vagueness with which all the claims were pressed.

Wilbert Skipper, Jr., a produce selector in the Landover warehouse, alleges that his manager harassed him by following him throughout the warehouse and referring to him by a racial slur on one occasion. Skipper further alleges that he overheard Caucasian workers using the same racial slur thirteen times in the four years prior to filing this lawsuit, and that he was exposed daily to racist graffiti in warehouse trailers and restrooms.

Skipper's allegations are probably the most specific of the plaintiffs, and he has alleged exposure to racist graffiti with the most frequency. The allegations are still, however, insufficient to support a racially hostile work environment claim. The district court was quite right to recognize that the content of the graffiti "was as offensive as one can imagine." But we cannot judge the severity of the graffiti without looking at the context in which it appeared. The record establishes that the graffiti, for the most part, appeared in regular sized print scattered amidst a significant amount of other non-racist graffiti. Moreover, most of the graffiti involved in each plaintiff's claims occurred inside 45-foot long trailers that were moved to and from the warehouses, and in the bathrooms. However Skipper admitted that because the trailers were constantly being moved, he had no idea whether Giant had removed the graffiti from any of the trailers. And on the few occasions where Skipper accompanied Giant managers to view the graffiti, those managers immediately removed it. The presence of offensive graffiti alone cannot sustain Skipper's claim.

Skipper also complains that he overheard white workers use racial epithets in the warehouse. However he could not recall the name of even a single white employee who uttered the offensive words, aside from one incident involving a Giant manager. This court has held that a plaintiff pressing a hostile work environment claim must substantiate his claim with reasonable specifics about the alleged incidents that underlie the claim. *Carter v. Ball*, 33 F.3d 450, 461-62 (4th Cir. 1994). We decline to depart from that rule today.

The other plaintiffs' claims, which were even less specific than Skipper's, fare no better. For instance, Melvyn Connor alleges that he viewed racist graffiti in the warehouses, but he cannot testify as to any dates on which he viewed the graffiti or even the frequency with which he viewed it. These defects in plaintiffs' claims are significant:

many of them fail to allege with any specificity the content of the graffiti; the frequency with which they saw it; or how it altered the terms and conditions of their employment. In fact, several of the plaintiffs fail to adduce evidence that the hostile conduct they allege was even based on race.[5]

And significantly, many of the plaintiffs fail to adduce any basis for imputing liability to the defendant. Giant maintains a clear anti-harassment and non-discrimination policy that is published in various company manuals and in a pamphlet mailed to each employee's home upon accepting employment with Giant. In addition, Giant maintains a Fair Employment Office to ensure compliance with these policies, as well as an Office of Minority Affairs to specifically focus on the needs of minority employees. Despite the resources available to address plaintiffs' complaints, many of the plaintiffs failed to inform Giant of the alleged misconduct. For instance, Skipper admits that he neither filed a union grievance nor a complaint with the Fair Employment Office regarding any of the offensive graffiti. In fact, prior to the lawsuit Skipper never even notified a single Giant manager about the graffiti in the bathrooms. And in those instances where plaintiffs did complain to managers, Giant addressed the problems.

Plaintiffs have thus failed to demonstrate two essential elements of their claims: that they experienced harassment so severe as to alter the terms and conditions of their employment, and that Giant knew or should have known about such harassment and failed to address it. Given these deficiencies, we must affirm the district court's dismissal of plaintiffs' hostile work environment claims.

---

[5]Plaintiffs urge us not only to ignore the vagueness of their claims, but also to consider acts that occurred well outside the applicable three-year statute of limitations in this case. *See Grattan v. Burnett*, 710 F.2d 160, 162 (4th Cir. 1983). However we need not consider whether the time-barred acts "are part of the same unlawful employment practice" as the acts within the limitations period because plaintiffs' claims would suffer the noted infirmities in any event. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002).

IV.

Plaintiffs next allege that Giant subjected them to discriminatory or disparate treatment by disciplining them more severely than their Caucasian co-workers. In order to succeed on this claim, each plaintiff must establish that: 1) he is a member of a protected group; 2) he was qualified for the job and his performance was satisfactory; 3) he suffered an adverse employment action despite his qualifications and performance; and 4) other similarly situated employees outside the protected class were treated more favorably. *Taylor v. Va. Union Univ.*, 193 F.3d 219, 233 (4th Cir. 1999) (en banc). If the plaintiffs thus create a prima facie case, the burden then shifts to defendants to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). At this point, the "presumption of discrimination 'drops out of the picture,'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 511 (1993)), and the burden shifts back to the plaintiff to demonstrate that the employer's stated reason "was in fact pretext." *McDonnell Douglas*, 411 U.S. at 804. Despite these shifting burdens, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves*, 530 U.S. at 143 (quoting *Cmty. Affairs v. Burdine*, 530 U.S. 248, 253 (1981)).

Plaintiffs' disparate treatment claims suffer many of the same deficiencies as their hostile work environment claims. Although plaintiffs allege that other similarly situated employees outside the protected class were treated more favorably, they offer little evidence to support such allegations. For instance, Anthony Blocker complains that he was denied the opportunity to participate in the modified duty program after being injured on the job, while other similarly situated Caucasian workers were allowed to participate in the program. Aside from listing their names and races, however, Blocker offers no evidence that these individuals were similarly situated beyond the fact that they were "temporarily disabled." In fact, Blocker admitted that he could not testify as to the nature of the injuries of white workers in the modified duty program. We thus are presented with no evidence that white employees with similar injuries to Blocker were

allowed to enter the program while Blocker was not. *See Carter*, 33 F.3d at 460-61.

Other plaintiffs fail to demonstrate that they have suffered adverse employment actions. For instance, David Newman alleges that he suffered disparate treatment when Giant initially denied him a no-interest emergency loan (which Giant granted shortly after the initial denial), when he was disciplined for arriving late to work, and when a manager discussed with him the appropriateness of taking sick leave on the same day each month. However none of these allegations in any way evidence a change in the terms, conditions, or benefits of Newman's employment. *See Von Gunten v. Maryland*, 243 F.3d 858, 868 (4th Cir. 2001) (change in work assignment which did not affect salary, benefits, job title, or nature of the work did not constitute adverse employment action).

More importantly, even if plaintiffs could make out a prima facie case, the defendant has offered legitimate and unrebutted reasons for its actions. Giant has indicated that the individual plaintiffs involved engaged in workplace conduct that transgressed workplace rules. For the most part, plaintiffs do not even dispute Giant's claims that they regularly arrived late for work (Newman); were inexplicably absent without notifying Giant in accordance with Giant's absence policy (Mathews); took unexcused sick leave (Ingram); and violated Giant's rules of conduct through involvement in a physical altercation with a coworker (Connor). Plaintiffs uniformly argue that Giant's proffered justifications are only pretext. But the bare allegation that white coworkers also committed similar infractions but were not disciplined, without evidence to substantiate that claim, is not sufficient to overcome Giant's nondiscriminatory reasons for its actions.

V.

Plaintiffs have failed to meet the Rule 23 class certification requirements for their individualized claims. Plaintiffs have also failed to adduce evidentiary support for their allegations under the legal framework enunciated by the Supreme Court. The judgment of the district court is therefore

*AFFIRMED.*