**Barbara Lee KOHL, Plaintiff,**

v.

**ASSOCIATION OF TRIAL LAWYERS OF AMERICA, et al., Defendants.**

**No. Civ.A. AW–97–3264.**

United States District Court,
D. Maryland,
Southern Division.

Dec. 14, 1998.

---

Phillip L. Feliciano, Allen C. Engerman, and Steven A. Katz, Douglas R. Sprong, and Carr, Korein, Tillery, Kunin, Montroy, Cates & Glass of Belleville, Illinois, for plaintiffs.

Joseph S. Crociata, Daniel E. Murphy, and Gilberg & Kiernan of Washington, D.C., for defendants.

### *MEMORANDUM OPINION*

WILLIAMS, District Judge.

Pending before the Court are cross-motions for summary judgment, and Plaintiff's motion for class certification. A hearing was held on December 2, 1998 pursuant to Local Rule 105.6 (D.Md.). Upon consideration of the motions, and arguments made in support of and opposition to, the Court will deny the Defendants' motion for summary judgment, grant Plaintiff's motion for summary judgment, and motion for class certification.

### *BACKGROUND*

This action is brought under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.,* in which the Plaintiff claims that she did not receive her full retirement benefits under her pension plan because it did not include the value of a cost

of living adjustment. The principal issue on summary judgment is whether Plaintiff's pension plan was required, either legally or contractually, to include a cost of living adjustment when plan participants elect to receive their benefits in a lump-sum payment.

The facts of this case are very straightforward. Plaintiff, Barbara Lee Kohl, was employed by the Association of Trial Lawyers of America ("ATLA") from October 1989 until July 1994, during which time Plaintiff was enrolled in the ATLA Pension Plan (the "Plan"). The Plan is subject to ERISA, and is a "defined benefit plan" under the Internal Revenue Code. The Plan provided a cost of living adjustment for those participants' benefits that were accrued between May 1, 1985 and August 1, 1994. In January of 1994, Plaintiff received a Participant Data and Benefit Summary informing her · that she would be entitled to a lump sum benefit payment if she received it on August 1, 1994. On August 4, 1994, Plaintiff filed a distribution request for a lump-sum payment. On August 24, 1994, Plaintiff received payment in the amount of $85,793.38. The distribution, however, did not include a cost of living adjustment. On June 13, 1996, after a series of correspondence regarding the discrepancy, Plaintiff's counsel submitted a formal claim for the additional benefits under the lump sum payment. Defendants acknowledged the claim on July 10, 1996, and rejected the claim by letter on September 13, 1996. Plaintiff appealed the rejection to the Plan's "Appeal Committee" on September 19, 1996, and the appeal was denied on February 10, 1997. Plaintiff then filed this action on September 25, 1997.

## DISCUSSION

### I. Cross–Motions for Summary Judgment on ERISA Violations

#### A. Standard of Review on Summary Judgment

■ "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 327,

106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citations omitted). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *Runnebaum v. NationsBank of Md., N.A.,* 123 F.3d 156, 164 (4th Cir.1997) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beale v. Hardy,* 769 F.2d 213, 214 (4th Cir.1985)). To defeat such a motion, the party opposing summary judgment must present evidence of specific facts from which the finder of fact could reasonably find for him or her. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). As is the case here, courts are often confronted with cross-motions because Rule 56(a) and (b) allow both plaintiffs and defendants to move for summary judgment. In such situations, courts must consider each party's motion individually to determine if that party has satisfied the summary judgment standard. *See* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 2720 (1983). Thus, in determining whether genuine and material factual disputes exist, the Court has considered the parties' respective memorandums and the many exhibits attached thereto, as well as the arguments made at the hearing, and construed all facts, and all reasonable inferences drawn therefrom, in the light most favorable to the respective non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Here, Plaintiff claims in her motion, and in her Response to Defendants' motion, that the lump sum benefit payment that she received did not include the value of the cost of living adjustment (COLA), which she claims is provided under the Plan. Defendants contend,

in their motion and Response to Plaintiff's motion, that the Plan does not provide a COLA when the participant elects to receive his/her retirement benefits in the form of a lump sum payment. Because the cross-motions for summary judgment essentially assert the same arguments, the Court will discuss the substance of the motions generally.

## B. *The COLA as an Accrued Benefit*

■ Plaintiff contends that under ERISA, a COLA is considered an "accrued benefit," and thus an inextricable part of a participant's normal retirement benefits. ERISA defines an "accrued benefit," in terms of a defined benefit plan, as "an annual benefit commencing at normal retirement age...." 29 U.S.C. § 1002(23) (1984). Except in specific instances, ERISA forbids any decrease of a participant's accrued benefits through an amendment to the pension plan. *See* 29 U.S.C. § 1054(g)(1) (1984). This is in line with one of Congress' goals in enacting ERISA—protecting the benefits described in a pension plan by ensuring that if a participant is promised a specific benefit and meets all of the necessary requirements to receive it, then the participant will actually receive the promised benefits. *See Nachman v. Pension Benefit Guaranty Corp.,* 446 U.S. 359, 375, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980). Thus, Plaintiff asserts that if a COLA is considered an accrued benefit under ERISA, then the pension plan participant should be entitled to receive it.

Plaintiff relies primarily on the case of *Hickey v. Chicago Truck Drivers, Helpers and Warehouse Workers Union,* 980 F.2d 465 (7th Cir.1992). In *Hickey,* the defendant union created a pension plan that provided retirement benefits to any employee who wished to participate. The pension plan was later amended to include a COLA to all retirement benefits. However, about 14 years after the plan's COLA amendment, the defendant terminated the plan without providing for future cost of living increases. The plan participants then brought an action under ERISA against the defendant for its reduction of their accrued benefits. The plaintiffs alleged that the defendant's elimination of the COLA, prescribed by their pension plan, violated ERISA because the COLA was an accrued benefit, and as such, could not be eliminated. Thus, the threshold question before the Seventh Circuit was whether a COLA is an accrued benefit under ERISA. *Id.* at 466. The *Hickey* court thoroughly examined the legislative history with regard to the term "accrued benefit" under ERISA, and concluded that because the primary purpose of the COLA is to provide retirement income in the form of an annual benefit, it is an accrued benefit. *Id.* at 468.

Defendants contend that *Hickey* is inapposite because it only stands for the proposition that once a COLA benefit is promised, the pension plan cannot be terminated without some provision for future cost of living increases. The Court believes Defendants are correct. *Hickey* does not answer the initial question before us, but rather begs the question of whether the ATLA pension plan promised a COLA to those participants who elect to receive their retirement benefits in the form of a lump sum payment. Thus, the threshold question here is whether the Plan provides the COLA to lump sum payments. However, if the Plan does, the Court will rely on the rationale and reasoning in *Hickey* in considering the liability of the Defendants.[1]

---

1. Defendants cite *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), for the proposition that whether a particular benefit is an "accrued benefit" is determined by the provisions of the particular retirement plan itself. Defendants' reliance is misplaced. In *Alessi,* the Court did not address the question of what is or what is not an accrued benefit. Rather, the Court explained that "what defines the content of the benefit" is left to the private parties creating the pension plan. *Id.* at 511, 101 S.Ct. 1895. Thus, the amount and method of calculating the benefit is reserved for the plan administrators, but whether the benefit is within the definition of an "accrued benefit," or some other term found in the statute, falls within the purview of a court's interpretation of ERISA. *See id.* (explaining that "it is the claim to the benefit, rather than the benefit itself, that must be 'unconditional' and 'legally enforceable against the plan.'" (citing *Nachman,* 446 U.S. at 371, 100 S.Ct. 1723)); *see also Ahng v. Allsteel, Inc.,* 96 F.3d 1033 (7th Cir.1996) (determining whether early retirement benefits are "accrued benefits" within the meaning of ERISA); *Cattin v. General Motors Corp.,* 955 F.2d 416 (6th Cir. 1992) (determining whether Social Security sup-

With this question in mind, this Court's task becomes a matter of contract interpretation. The language in the Plan is unclear as to whether a COLA applies to a lump sum payment or not. The determination of whether a term is ambiguous, however, is a question of law for the Court. The Fourth Circuit's decision in *Jenkins v. Montgomery Industries, Inc.* provides some guidance in interpreting ERISA regulated pension plan provisions. 77 F.3d 740 (4th Cir.1996). In *Jenkins*, the plaintiff brought suit alleging violations of ERISA due to a denial of benefits under his pension plan. The plan administrators contended that plaintiff's specific claim for benefits was excluded from his coverage. Finding the plan's language, with regard to plaintiff's intended medical treatment, to be ambiguous, the Fourth Circuit instructed that "[f]ederal courts interpret ERISA regulated benefit plans without deferring to either party's interpretation by 'using ordinary principles of contract law [and] enforcing the plan's plain language in its ordinary sense.' Where there is ambiguity in the plan, courts 'construe it against the drafter, and in accordance with the reasonable expectations of the insured.'" *Id.* at 743 (citations omitted); *see also Glocker v. W.R. Grace & Company,* 974 F.2d 540, 544 (4th Cir.1992) (explaining that the reason for courts' strict construction against the party preparing the plan is that the drafter created the document, and could have more easily prevented any ambiguities.) The *Jenkins* court further explained that ERISA does not preempt the application of state or federal common law in cases where a plan's terms require a court's construction and interpretation. *Id.* at 743. The court stated:

> Indeed, courts considering ERISA-regulated plans often apply general principles of contract law, insurance law or trust law that do not conflict with the Congressional purpose of enacting ERISA. While state law concepts should not be used to interpret a plan beyond its express terms, they may lead to the inclusion of terms defined by employer representations and employee expectations even if they extend past the language of the plan.

*Id.* at 744.

■ Here, Defendants do admit that the COLA is provided under Plaintiff's plan. However, Defendants assert that the COLA only applies to those Plan participants that elect the normal form of payment, the 10-year annuity. Defendants direct the Court's attention to the language found in the Plan agreement with regard to the lump sum "Cash Option" form of payment, and the Cost of Living Adjustment. The relevant parts of the Plan provide:

### § 10.3 Cash Option

The Participant who elects this option will receive a cash settlement on his Retirement Date in lieu of the retirement income to which he would otherwise be entitled.

In general, the amount of the cash settlement will be equal to the Value[2] of retirement income that would have commenced as of the Participant's Retirement Date had the normal form described in Section 9.2 been effective.

### § 6A.2 Amount of Cost-of-Living Adjustment

On May 1, 1985 and on each May 1 thereafter, each Current Retirement Income[3] which first became payable under the Plan prior to the preceding January 1 will be adjusted by multiplying it by the ratio that the Consumer Price Index[4] for January of the current year bears to the Consumer

---

plements are "accrued benefits" within the meaning of ERISA).

2. The Plan determines Value for those participants who have not attained the normal retirement date under the Plan (as Plaintiff had not), by "multiplying the Participant vested Accrued Benefit at Normal Retirement Date by the PBGC's Actuarial Value of $1 based on the Participant's age as of the date the Value is determined payable at his Normal Retirement Date." (Pl.'s Ex. at 13).

3. The Plan defines "Current Retirement Income" as "the yearly amount of retirement income payable to a Participant or other payee on the April 30 preceding the date the Cost-of-Living Adjustment is made." (Pl.'s Ex. at 23).

4. The Plan defines "Consumer Price Index" as the "Consumer Price Index (U.S. All Urban Index) published by the United States Department of Labor, Bureau of Labor Statistics." (Pl.'s Ex. at 23).

Price Index for January of the proceeding year.

In no event shall the amount of retirement income payable to a Participant or other payee under the Plan after a Cost–of–Living Adjustment has been made be:

(A) more than 104% or less than 96% of the Current Retirement Income;

(B) less than the Base Retirement Income [5].

### § 6A.3 Amendment to Cost–of–Living Adjustment

Effective as of August 1, 1994, the Cost–of–Living Adjustment shall cease with respect to all future accruals for all active and vested terminated Participants. Each active and vested terminated Participant will not be entitled to any future Cost–of–Living Adjustment under the Plan with respect to any retirement income accrued on or after August 1, 1994. However, each such Participant will continue to be eligible for a Cost–of–Living Adjustment on each May 1 after his Retirement Date in accordance with the terms of Section 6A.2 but solely with respect to the retirement income accrued as of July 31, 1994.

Each Participant with a Retirement Date prior to August 1, 1994 shall continue to be eligible for a Cost–of–Living Adjustment to his annuity amount on May 1, 1995 and each May 1 thereafter in accordance with the terms of Section 6A.2.

(Pl.'s Ex. 1 at 23, 48).

Defendants argue that because the COLA is not specifically mentioned as part of the "Value" of the lump sum payment, then it is not included in such payments. Defendants are correct that the COLA is not mentioned in § 10.3 Cash Option, and that the cash option is not mentioned in § 6A, which describes the COLA. However, the COLA is also not specifically referenced under § 9.2 defining the "Normal Form of Payment." Section 9.2, which Defendants have already conceded provides the COLA, reads, in relevant part:

### § 9.2 Normal Form of Payment—Ten Year Certain and Life

If the Participant does not have a Spouse or his Retirement Date, the normal form of payment is the Ten–Year Certain and Life form. This form provides that payment will be made to the Participant in a level amount during his lifetime, and that if his death occurs within the ten-year period commencing upon his Retirement Date, retirement income in the same amount will be paid to the Beneficiary designated by the Participant for the balance of the ten-year period.

(Pl.'s Ex. 1 at 38). Moreover, none of the sections addressing alternate forms of payments specifically mentions the COLA. The COLA is only referenced in § 6A of the Plan, and no where in that section does it specifically state that the COLA only applies to those electing the Normal Form of Payment. As such, the Plan is ambiguous with regard to the COLA. Thus, under ordinary principles of contract law, where there is ambiguity in the pension plan, the Court must construe it against the Defendants, and in accordance with the reasonable expectations of the Plaintiff. In this case, it would be reasonable for Plaintiff to read the Plan as providing her a COLA despite her electing a lump sum benefit payment.

Defendants further argue that the method in which the COLA is calculated under the Plan necessarily makes the COLA incompatible with the lump sum payment option. Defendants assert that because the COLA is tied to the Consumer Price Index ("CPI"), any adjustment would be based upon historical data over a period of time, and thereby cumulative in nature. As such, Defendants claim that calculating a COLA for a lump sum payment would be impossible because it would be based on speculations of future CPI changes. In addition, Defendants argue that because there is no process provided in the Plan to calculate the COLA for a lump sum payment, then it was not intended to be included.

Making projections of what the CPI or the inflation rate will be in years to come is definitely not rocket science, but rather actuarial science. Actuaries make such projec-

---

**5.** The Plan defines "Base Retirement Income" as "the yearly amount of retirement income to

which a Participant or other payee is entitled on his Retirement Date." (Pl.'s Ex. at 23).

tions routinely, and the IRS recognizes these projections as feasible. *See* I.R.S. Announcement 95–99, I.R.B.1995–48 (Nov. 27, 1995). In addition, the Court does not believe that the absence of language explaining how the COLA is to be computed with regard to lump sum payments is dispositive about whether the cash option includes the COLA.

## C. *The Actuarial Equivalent of the Normal Retirement Benefit*

■ Plaintiff posits a second argument in which she contends that ERISA and the IRS require that if a COLA is offered as a part of the participant's normal retirement income, it must also be extended to those participants that elect any of the alternate forms of payment. Plaintiff claims that § 204(c)(3) of ERISA and § 411(c)(3) of the IRS Code require that any optional form of payment must be the actuarial equivalent of the normal form of retirement benefits. Although both sections provide such a requirement, they are inapposite to the facts of this case because those sections pertain to an employee's accrued benefits derived from employer and employee contributions. The Plan, here, does not include employee contributions. However, the import of § 1054 of ERISA which provides requirements for accrued pension benefits, is that a participant's accrued benefits must be the actuarial equivalent of what her normal retirement benefits would have been when computed under the plan. *See generally* § 1054(b)(1)(B). Nonetheless, by its own terms, the Plan states that the lump sum cash option shall be "equal to the Value of retirement income that would have commenced as of the Participant's Retirement Date had the normal form described in Section 9.2 been effective." (Pl.'s Ex. 1 at 48). As previously mentioned, the "normal form" described in § 9.2 is the 10

year annuity option that Defendants have admitted provides the COLA. As such, it would be reasonable that the lump sum Cash Option would also provide the COLA.[6]

Finally, Plaintiff cites an IRS Announcement addressing ERISA regulated pension plans and their distribution of benefits, which states:

> For purposes of calculating a single-sum distribution of participant's benefit, COLA increases in the dollar limitation and the compensation limitation must not be anticipated. *Where a plan formula provides that a participant's benefit is increased each year by a COLA which is a function of the Consumer Price Index (CPI), a participant receiving a benefit in the form of a single sum must receive projections of the CPI increases (based on reasonable actuarial assumptions) as part of a single sum,* but only to the extent that the single sum does not exceed the actuarial present value of the lesser of the current dollar limitation or current compensation limitation applicable to the participant.

I.R.S. Announcement 95–99 at 37 (emphasis added). While the IRS Announcement appears to be clearly on point, Defendants argue that it should not be considered by the Court because it is not legally binding authority. However, the Supreme Court has stated that courts "should consider the views of the PBGC [Pension Benefit Guaranty Corporation] and the IRS. For a court to attempt to answer these questions without the views of the agencies responsible for enforcing ERISA, would be to 'embar[k] upon a voyage without a compass.'" *Mead Corp. v. B.E. Tilley,* 490 U.S. 714, 726, 109 S.Ct. 2156, 104 L.Ed.2d 796 (1989) (citing *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 568, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980)).

**6.** Defendants later change their argument in their Reply in support of their motion for summary judgment. Therein, Defendants first acknowledge the omission of the specific reference of a COLA under the normal form of payment's description. Then, Defendants describe the COLA as an "extra-ERISA" benefit that is "added only after the 'Normal Retirement Income' is calculated." (Def.'s Rep. at 6). Finally, Defendants conclude that because the COLA is not part of the "Normal Retirement Income," a lump sum

distribution that does not contain a COLA is the actuarial equivalent of the "Normal Retirement Income." (*Id.* at 7). The Court is not persuaded by Defendants' argument. As the *Hickey* court held, "[the term 'accrued benefit' has statutory meaning, and the parties cannot change that meaning by simply labeling certain benefits as 'accrued benefits' and others, such as the COLA, as supplementary benefits.]" *Hickey,* 980 F.2d at 468.

■ Thus, for the reasons stated above, the Court concludes that under the ATLA Pension Plan, participants receiving their retirement benefits in the form of lump sum payment are entitled to the cost of living adjustment. Accordingly, the Court will deny the Defendants' motion for summary judgment and grant the Plaintiff's motion for summary judgment. However, with regard to the amount of damages, a genuine issue of material fact exists as to how the COLA will be calculated. Thus, the parties are ordered to submit a proposed joint schedule for discovery on this issue.

## II. *Motion for Class Certification*

Plaintiff seeks certification of a class consisting of:

> All participants in the Association of Trial Lawyer of America Pension Plan who were participants in the Plan between May 1, 1985 and August 1, 1994, and who received, or who will be eligible to receive in the future, a lump sum distribution which was less than the present value of their normal retirement benefit because said distribution did not include the value of the cost of living allowance.

(Pl.'s Mot. Class Cert. ¶ 8).

Federal Rule 23 of Civil Procedure sets forth the prerequisites for a class action: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class ("typicality"); and (4) the representative parties will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed.R.Civ.P 23(a). Along with satisfying these four elements, the party seeking class certification must also demonstrate that the action falls within one of the categories enumerated in Rule 23(b). At the outset, Defendants concede that the "commonality" and "typicality" requirements have been satisfied. However, they do take issue with whether the "numerosity" and "adequacy of representation" requirements have been met.

### A. *Rule 23(a) Requirements*

#### 1) Numerosity

■ Numerosity exists when the joinder of all class members is impracticable. Fed. R.Civ.P. 23(a)(1). Here, Plaintiff estimates that the proposed class will consist of at least 35 individuals, which would make joinder impracticable. *See Dameron v. Sinai of Baltimore,* 595 F.Supp. 1404, 1407–08 (D.Md.1984) *aff'd. in part, rev'd in part,* 815 F.2d 975 (4th Cir.1987) ("A class consisting of as few as 25 to 30 members raises the presumption that joinder would be impractical"). Plaintiff relies on Defendants' answer to an interrogatory seeking the number of employees who accepted a lump sum payment after January 1, 1985, and did not receive a COLA, in which Defendants responded with 35 individuals since April 1, 1991. (Pl.'s Memo. Class Cert., Ex. 1). Defendants, on the other hand, claim that the putative class only consists of approximately 6 to 14 individuals. Defendants assert that only those individuals that *received* a lump sum payment between May 1, 1985 and August 1, 1994, when the COLA was in effect, would be eligible for class certification. As such, Defendants estimate that no more than 14 individuals, whom they have identified from the list of individuals provided in their answer to the aforementioned interrogatory, received a disbursement before August 1, 1994 or within twelve months of that date. While the Court need not engage in a numbers game, the Defendants' estimates are inaccurate. *See Ballard v. Blue Shield,* 543 F.2d 1075, 1080 (4th Cir.1976), *cert. denied,* 430 U.S. 922, 97 S.Ct. 1341, 51 L.Ed.2d 601 (1977) ("numbers alone are not controlling"). Defendants fail to acknowledge that the list provided in response to the interrogatory only contained names of participants that received a lump sum payment *after* April 1, 1991.[7] Thus, a number of participants who received a lump sum payment between May 1, 1985 and April 1, 1991 are not accounted for. In addition, as Plain-

---

**7.** Defendants claimed that they lacked sufficient knowledge or information to respond to any distributions before this date.

tiff has argued, the proper definition of the putative class should include any participant in the Plan during the time the COLA was included in the normal retirement benefit. Although Defendants seek to make the disbursement date dispositive of the class cut off date, Plaintiff's focus upon the dates of the participants' participation in the Plan is the correct method, and the language of the Plan supports this position. Section 6A.3 provides:

### § 6A.3 Amendment to Cost–of–Living Adjustment

Effective as of August 1, 1994, the Cost–of–Living Adjustment shall cease with respect to all *future accruals* for all active and vested terminated Participants. Each active and vested terminated Participant will not be entitled to any future *Cost–of–Living Adjustment under the Plan with respect to any retirement income accrued on or after August 1, 1994. However, each such Participant will continue to be eligible for a Cost–of–Living Adjustment on each May 1 after his Retirement Date in accordance with the terms of Section 6A.2 but solely with respect to the retirement income accrued as of July 31, 1994.*

Each Participant with a Retirement Date prior to August 1, 1994 shall continue to be eligible for a Cost–of–Living Adjustment to his annuity amount on May 1, 1995 and each May 1 thereafter in accordance with the terms of Section 6A.2.

The underlined portions of the Plan show that participants, *regardless of when they elect payment,* are entitled to the COLA with respect those benefits accrued between May 1, 1985 and August 1, 1994.

Moreover, when considering the numerosity requirement, courts also look to such factors as, the geographic dispersion of the class members, the difficulty of identification, and the negative impact on judicial economy and the claimants if individual suits were required. Here, Plaintiff asserts that most members of the putative class live in states other than Maryland.[8] In light of these facts, and the fact that resolution of the legal

issues in this case on a class basis would be more economical, the Court is convinced that joinder would be impractical and the numerosity requirement has been met.

### 2) Commonality and Typicality

Under the "commonality" prong, Rule 23(a)(2) only requires that some questions of law or fact be shared by the putative class members, and not all questions raised be common. *See Forbush v. J.C. Penney Co.,* 994 F.2d 1101, 1106 (5th Cir.1993). Plaintiff maintains that this requirement is satisfied based on the fact that all putative class members share a common nucleus of facts in that Defendants incorrectly excluded the COLA from their lump sum payments. Consequently, common questions of law and fact exist as to all members of the class.

The "typicality" requirement assures that the claims of the representative party are similar enough to the claims of the putative class so that the class members may be adequately represented. However, "[f]actual differences will not necessarily render a claim atypical if the representative's claim arises from the same event, practice or course of conduct that gives rise to the claims of the class and is based on the same legal theory." *Smith v. B & O Railroad Co.,* 473 F.Supp. 572, 581 (D.Md.1979). Plaintiff asserts that her claims would be typical of the claims of the putative class because each class member would have suffered the same harm, to wit, an underpayment of their pension benefits, and would assert the same violations under ERISA. Thus, Plaintiff has satisfied the typicality requirement.

### 3) Adequacy of Representation

The last requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class. This requirement is met if Plaintiff's interests are not antagonistic to the interests of the proposed class, *see Broussard v. Meineke,* 155 F.3d 331, 337–38 (4th Cir.1998), and Plaintiff's attorneys are quali-

---

**8.** Plaintiff is currently a resident of Florida, and maintains that a number of ATLA retirees have relocated throughout the country, including Florida, Washington, New Jersey, Virginia, the District of Columbia, and Maryland.

fied and have experience with class actions and complex litigation.[9] *See Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). Here, Defendants challenge Plaintiff's ability to adequately protect the interests of the class. Defendants argue that to the extent that Plaintiff is successful in her suit and obtains some monetary relief, she would be depriving the Plan of a portion of its "finite pool of resources." (Def.'s Opp. to Class Cert. at 4). According to Defendants, if Plaintiff is successful in this lawsuit, and damages are granted, "she will take money [from ATLA employees] that could be used for pay raises and enhanced benefits away from current employees." *Id.* Thus, Defendants argue that a conflict of interest would exist between Plaintiff and those members of the class that are still employed.

Defendants' argument mirrors that made by the defendants in *Dameron v. Sinai of Baltimore.* 595 F.Supp. at 1409. In *Dameron,* the plaintiff brought an action under ERISA against her employer, Sinai Hospital, the hospital's pension plan, and its administrators. Plaintiff alleged that the method the defendants used to calculate her pension benefits violated certain provision of ERISA. Plaintiff then filed a motion for class certification to allow those persons "who have received, currently receive, or will receive benefits" calculated in the same manner as she had. *Id.* at 1407. The Court analyzed Plaintiff's motion under the four prong test under Rule 23(a). With regard to the adequacy of representation requirement, the defendants argued that the plaintiff's claim was "antagonistic to the interests of one segment of the class she seeks to represent—those employees who 'will receive' benefits from the Plan." *Id.* The defendants argued further that if the plaintiff "is successful, the relief she seeks will result in additional costs to Sinai Hospital in funding the Plan ... [because] ... money for payment of these additional costs would be money that might otherwise be available to Sinai to cover pay increases or to improve general benefits for current employees...." *Id.* Thus, defendants' contention concerned whether plaintiff could ad-

equately represent the interests of future retirees/current employees. The *Dameron* court, having no evidence before it to justify defendants' challenge, posited that "even potential antagonistic interests are enough to cause concern about adequacy of representation." *Id.* The court then ordered the parties to meet to discuss the potential conflict, and gather information for the court to assess whether the named plaintiff can adequately represent that segment of the putative class. However, the court did find that the plaintiff could adequately represent the interests of current retirees, and thereafter certified them as a class.

This Court, like in *Dameron,* has no real evidence before it that Plaintiff's interests may be antagonistic to the interests of current ATLA employees/future retirees. However, the Court finds no problem with Plaintiff representing the interests of current retirees, like herself. Because Plaintiff's claim, and the claim of every putative class member consisting of current retirees, revolve around one federal law (ERISA), one contract (the ATLA Pension Plan), and the same course of conduct (failure to provide a COLA in lump sum payments), this class meets the requirements of Rule 23(a) and is appropriate for certification. Accordingly, the class will only consist of those current retirees who participated in the ATLA Pension Plan between May 1, 1985 and August 1, 1994, and who received a lump sum distribution that did not include the value of the cost of living allowance.

### B. *Rule 23(b) Requirements*

▮▮▮▮ It is clear that the Plaintiff can satisfy either of the requirements of Rule 23(b)(1) and 23(b)(2). Under Rule 23(b)(1)(A), a class action may be brought if the prosecution of separate actions by or against individual members of the class would create "a risk of inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class." The adjudication

---

9. Defendants have not challenged the ability of Plaintiff's counsel to conduct this action, thus the Court will assume they are competent. *See Ka-*

*lodner v. Michaels Stores, Inc.,* 172 F.R.D. 200, 211 (D.C.Tex.1997)

of this case as a class action will result in one interpretation of the Plan's prescribed benefits, and provide a uniform formula in which the COLA will be calculated for lump sum payments. As for the Rule 23(b)(2), it requires the party opposing the class to have "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Here, it cannot be gainsaid that Defendants have calculated lump sum payments, in every instance, without including the cost of living adjustment. Since Defendants have acted in a consistent manner toward the putative class members, and Plaintiff is seeking injunctive relief pursuant to 29 U.S.C. § 1132(a)(3), the prerequisite of Rule 23(b)(2) has been satisfied.

■■■ Defendants contend that Plaintiff cannot satisfy the requirements of Rule 23(b)(1) or (b)(2) because the primary objective of Plaintiff's suit is to recover money damages, and such actions are not appropriate for class certification. Defendants rely solely on the Fourth Circuit's decision in *Zimmerman v. Bell*, 800 F.2d 386, 389 (4th Cir.1986). Defendants claim that *Zimmerman* held that when the putative class seeks money damages as relief, there is no risk of incompatible standards of conduct, and thus class certification would not be appropriate. However, Defendants' reliance is misplaced. First, *Zimmerman* was a shareholder derivative suit in which the plaintiffs were seeking monetary relief, not injunctive. Second, the court specifically limited its holding to those instances in which monetary relief is sought. *Id.* at 389-90. Third, any limitation that *Zimmerman* may have placed on class certification based on whether money damages were sought or not was specifically rejected by the Fourth Circuit in *In re A.H. Robins Co., Inc.*, 880 F.2d 709 (4th Cir.1989). Therein, the *A.H. Robins* court quoted "Newberg on Class Actions:"

> Some courts have gone further and have held that Rule 23(b)(1)(A) was not designed to encompass class suits that seek

damages relief. Such a limitation not only is unsupported in the language of the subdivision but also is contrary to the prevailing precedents which construe the various class categories of Rule 23(b). This construction of Rule 23(b)(1)(A) has been generally rejected or not followed by prevailing precedents. Moreover, cases in which the plaintiffs are seeking recovery from a limited fund readily qualify under Rule 23(b)(1)(B) and commonly qualify also under Rule 23(b)(1)(A).

*Id.* at 730, n. 28 (quoting 1 Newberg on Class Actions, § 4.04, pp. 276–77). The court further stated, that

> [w]e have in two earlier cases taken note of this limitation in the use of Rule 23, but we have never based our decision in any case on such limitation. Thus, in *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594 (4th Cir.1976), we were only concerned with whether a damage suit could qualify under (b)(2), which relates to declaratory or injunctive action. We, however, expressly chose not to decide the case on that point. *See* 538 F.2d at 596. In *Zimmerman v. Bell*, 800 F.2d at 389, we said that Rule 23 is "not normally posed by a request for money damages." This was merely a dictum without actual relevance to the decision in that case.

*Id.* Accordingly, the Court is satisfied that Plaintiff has met all the requirements of Fed. R.Civ.P. 23(b)(1) and (b)(2).[10]

### CONCLUSION

For the reasons stated, Plaintiff's motion for summary judgment will be granted, Defendants' motion for summary judgment will be denied, and Plaintiff's motion for class certification will be granted in part to the extent that the class only consist of current retirees. In light of this ruling, the parties will jointly schedule a conference with the Court to determine how to best proceed from this point, as well as submit a proposed joint schedule for discovery on the issue of dam-

---

**10.** Since the effect of a judgment in an action under Rule 23(b)(1) is the same as under 23(b)(2), that all class members will generally be bound, the mechanics of both actions should be similar.

ages. A separate Order consistent with this Memorandum Opinion will follow.