# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 04-3140

DANIEL JT TAUBENFELD and
RAIZEL TAUBENFELD,

*Plaintiffs-Appellees*,

v.

AON CORP.,

*Defendant-Appellee*.

Appeal of: HANNAH FELDMAN

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 CV 5631—**Harry D. Leinenweber**, *Judge*.

_____

ARGUED MARCH 30, 2005—DECIDED JULY 5, 2005

_____

Before BAUER, RIPPLE, and KANNE, *Circuit Judges*.

KANNE, *Circuit Judge*. On August 8, 2002, the first of ten class action lawsuits alleging that Aon Corporation had violated federal securities laws was filed in the Northern District of Illinois. In October 2002, the court appointed Caldwell & Orkin, Inc., as the lead plaintiff for the consolidated actions. Caldwell & Orkin had no retainer agreement in place with its chosen lead council, Shiffrin & Barroway.

The parties reached a settlement agreement on April 14, 2004. After a fairness hearing on July 27, 2004, the court approved the $7.25 million settlement, which provided recovery of $0.053 per share of Aon common stock before fees and expenses.

The class was given written notice of this settlement agreement and informed of members' right to file objections to it. On the subject of attorneys' fees and expenses, the notice stated that lead counsel intended to apply for "fees of up to 33 and 1/3 percent (33.3%) of the Settlement Fund, and for reimbursement of expenses incurred in connection with the prosecution of this Action in the approximate amount of $100,000." (R. 38, Ex. A.1 ¶ 7.) Hannah Feldman was the lone class member to object to the settlement agreement. She alleged both inadequate notice and excessive fees relative to the level of success achieved by the class. The district court overruled her objection and awarded lead counsel the fees and expenses it requested: 30% of the settlement fund plus $111,054.06 in expenses.

Feldman does not appeal the district court's ruling on adequacy of notice, arguing now only that the fees and expenses awarded to lead counsel were excessive. Her primary argument is that the district court's method for determining proper attorneys' fees and expenses was improper under *In re Synthroid Marketing Litigation*, 264 F.3d 712 (7th Cir. 2001) ("*Synthroid I*"). In that case, we reiterated that "when deciding on appropriate fee levels in common-fund cases, courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Id.* at 718; *see also Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 565 (7th Cir. 1994) (directing district court to determine fair attorneys' fees in class action by considering the probability of success at the outset of litigation); *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The object in awarding a reasonable attorney's fee . . . is

to give the lawyer what he would have gotten in the way of a fee in an arm's length negotiation, had one been feasible."). Although is it impossible to know *ex post* exactly what terms would have resulted from arm's-length bargaining *ex ante*, courts must do their best to recreate the market by considering factors such as actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions. *Synthroid I*, 264 F.3d at 719. In this case, Feldman argues, the district court's consideration of the *Synthroid I* factors was inadequate and amounted to a "benchmark" approach in which counsel is awarded exactly what attorneys in other cases were awarded, regardless of the risk present or result achieved in this particular case.

Unfortunately for the objector, she did not articulate her argument regarding fee-setting methodology to the court below. Instead, she cited only the lower court's *Synthroid* opinion (on remand from *Synthroid I*) for the fact that bids as low as 15% for contractual attorneys' fees have been observed in cases where law firms participated in an auction for the position of lead counsel. *See In re Synthroid Mktg. Litig.*, 201 F. Supp. 2d 861, 873 (N.D. Ill. 2002), *aff'd in part and vacated in part by* 325 F.3d 974 (7th Cir. 2003) ("*Synthroid II*"). Feldman's written objection contained conclusory allegations that 33% of the settlement fund would be a "grossly excessive" fee in light of the "very poor settlement obtained for the class," but did not address or propose a proper fee-setting methodology. (R. 41.) Even when asked point blank for an elaboration of the objection to attorneys' fees at the fairness hearing, Feldman's counsel did not raise the argument that the court had not ade-

quately re-created the market in assessing fees.[1] Thus, Feldman has waived the argument that the district court did not comport with the methodology mandated by *Synthroid I* in granting attorneys' fees. *See, e.g., Heller v. Equitable Life Assurance Soc'y*, 833 F.2d 1253, 1261-62 (7th Cir. 1987) ("On numerous occasions we have held that if a party fails to press an argument before the district court, he waives the right to present that argument on appeal. . . . As we have made clear, it is axiomatic that arguments not raised below are waived on appeal.") (citations and quotation marks omitted).

Noting that lead counsel's memorandum to the district court in support of its application for fees and expenses contained an analysis of the strength of the class's case, data on fees awarded in other class actions in the jurisdiction, and evidence of the quality of legal services rendered— the same type of evidence needed to mimic the market per *Synthroid I*—we decline to undertake the *de novo* review of the procedure used to arrive at the award to which the objector would have been entitled if she had not waived the argument. *See Harman v. Lyphomed, Inc.*, 945 F.2d 969, 973 (7th Cir. 1991).

We proceed to review the award for abuse of discretion; under that standard, the award must be reversed if it cannot be rationally supported by the record. *See id.* As we said in *Harman*, "[d]istrict courts are far better suited than

---

[1]  The transcript reads as follows:

> THE COURT: Counsel, your objection?

> MR. BOGOT: Your Honor, I really don't have much more to add than what is in our brief. In some cases thirty percent is reasonable. It depends on the case. Considering the amount of settlement here, I think there are grounds to object but I will just stand on our objection.

(Tr. at 10.)

appellate courts to assess a reasonable fee in light of the case's history." *Id.* In this case, the district court based its decision on a number of factors adequately supported by the record.

First, the court considered awards made by courts in other class actions. Lead counsel submitted a table of thirteen cases in the Northern District of Illinois where counsel was awarded fees amounting to 30-39% of the settlement fund. (R. at 44.) These data are relevant for purposes other than "benchmarking" as defined by the objector; attorneys' fees from analogous class action settlements are indicative of a rational relationship between the record in this similar case and the fees awarded by the district court.

The district court also evaluated other factors in its decision on attorneys' fees. It considered the quality of legal services rendered and the contingent nature of the case. The court found that lead counsel was taking on a significant degree of risk of nonpayment with the case. (Tr. at 11 ("[T]he Court believes that counsel adequately pressed this suit and took it on a contingent basis. [In t]hese cases, obviously, [it is] not easy to prove securities fraud. You have to prove fraud. Usually it's negligence rather than fraud.").) Indeed, an SEC investigation essentially cleared Aon of any perceived wrongdoing and bolsters the finding that this was not an "easy" case for lead counsel. (R. at 44.) Given the legal hurdles that lead counsel faced in proving liability, the $7.5 million settlement obtained for the class at a relatively early point in time also seems reasonable and bears a rational relationship to the amount of attorneys' fees awarded. *See Donovan v. Estate of Frank E. Fitzsimmons*, 778 F.2d 298, 309 (7th Cir. 1985) (noting the risk of losing on the merits and the time value of money among the factors to be considered in evaluating the reasonableness of a settlement). In light of this record, it cannot be said that there is no evidence supporting the attorneys' fees granted in this case or that the district court abused its discretion in making the award.

The objector's quarrel with the portion of lead counsel's award pertaining to reimbursement for expenses barely warrants comment. Feldman argues that the class was only given notice for fees in the amount of $100,000, but lead counsel was actually awarded $111,054.06. Again, Feldman did not make this argument in the district court and has thus waived it. *See, e.g.*, *Heller*, 833 F.2d at 1261-62. Moreover, this argument would have been meritless; notice was given for expenses "in the approximate amount of $100,000" and the amount awarded is in fact "approximately" that much.

For the foregoing reasons, lead counsel's award for fees and expenses is AFFIRMED.

A true Copy:

     Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*