In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 10-1978, 10-2175 & 10-3713

GARY WILLIAMS and NANCY MEEHAN,

*Plaintiffs-Appellees,*

*v.*

ROHM AND HAAS PENSION PLAN,

*Defendant-Appellee.*

APPEALS OF:

REGINA ADAMSKI, et al., and MARK JACKSON

Appeals from the United States District Court
for the Southern District of Indiana, New Albany Division.
No. 4:04-CV-0078—**Sarah Evans Barker**, *Judge.*

ARGUED MAY 6, 2011—DECIDED SEPTEMBER 2, 2011

Before BAUER, KANNE, and EVANS\*, *Circuit Judges*.

KANNE, *Circuit Judge*. After eight years, the end is near
for this dispute between the Rohm and Haas Company

---

\* Circuit Judge Evans died on August 10, 2011, and did not
participate in the decision of this case, which is being
resolved by a quorum of the panel under 28 U.S.C. § 46(d).

Retirement Plan (the "Plan") and all Plan participants and beneficiaries who took a lump sum distribution after January 1, 1976 (the "Class"). After this court affirmed the district court's grant of summary judgment on liability, the Class and the Plan negotiated a $180 million settlement, of which Class counsel asked for $43.5 million in attorney's fees. Numerous Class members objected, but the district court approved the settlement and awarded the requested attorney's fees. Some of the objecting Class members appealed, and we now affirm the settlement approval and fee award.

## I. BACKGROUND

When Cory Williams left Rohm and Haas in 1997, he chose to take a $47,850 lump sum distribution of his Plan pension. He later came to believe that the payment he received should have included the present value of future cost of living adjustments ("COLAs") that would have been included had he chosen to receive his pension as an annuity. In 2002, he filed a class action suit against the Plan in federal district court on behalf of himself and the Class. The district court eventually granted summary judgment on liability in the Class's favor. The Plan made an interlocutory appeal, and we affirmed. *See Williams v. Rohm & Haas Pension Plan*, 497 F.3d 710 (7th Cir. 2007) (reporting the history of this litigation in greater detail).

Reviewing the grant of summary judgment, we addressed one issue: whether the COLA was an accrued benefit, such that ERISA § 204(c)(3), 29 U.S.C. § 1054(c)(3),

would apply. We concluded that a COLA is an accrued benefit, as defined in ERISA § 2(23)(A), 29 U.S.C. § 1002(23)(A), and we remanded for a determination of damages. The Supreme Court denied the Plan's petition for certiorari. *Rohm & Haas Pension Plan v. Williams*, 552 U.S. 1276 (2008). On remand before the district court, the Plan regrouped and pressed two arguments. First, it argued that some or all of the Class's claims were barred by the appropriate (then-undetermined) statute of limitations. Second—and more relevant to this appeal—it argued that most or all Class members who had taken subsidized early retirement were entitled to no damages.

The Plan based its early retirement argument on the language of ERISA § 204(c)(3), which provides: "[I]f an employee's accrued benefit is to be determined as an amount other than an annual benefit commencing at normal retirement age . . . the employee's accrued benefit . . . shall be the actuarial equivalent of such benefit . . . ." 29 U.S.C. § 1054(c)(3). According to the Plan's interpretation, an early retiree who takes a lump sum is entitled only to a sum that was no less than the actuarial equivalent of a COLA-enhanced annuity based on the normal retirement age. The early retirees had received more (because of the early-retirement subsidy), and the Plan argued the early retirees thus were entitled to no damages.

The Class vehemently contested the Plan's position on the early retirees' damages, basing their argument on 26 C.F.R. § 1.411(a)-11(a)(2). This Treasury Regulation

provides that when a plan specifies that an early-retirement lump sum is to be the actuarial equivalent of the early-retirement annuity, the lump sum must include a COLA based on the full lump sum. In response to the Class's § 1.411(a)-11(a)(2) argument, the Plan pointed to *McCarter v. Ret. Plan for the Dist. Managers of Am. Family Ins. Grp.*, where we held that § 1.411(a)-11(c)(2)(I) does not regulate a pension plan's lawfulness, but only its tax-qualified status. 540 F.3d 649, 651 (7th Cir. 2008). The Plan argued that *McCarter*'s reasoning applies to all of § 1.411(a)-11.

Before the district court had ruled on the early retirees' damages, the parties reached a settlement. The proposed settlement provided that each early retiree would receive roughly 3.5% of her original lump sum, unless the COLA on a normal-retirement-age-based annuity outweighed her early-retirement subsidy— a rare situation. Several groups objected to the proposed settlement. One of them, a subset of early retirees whom we call "the Adamski Objectors," argued that early retirees should have received separate counsel and that the settlement was "blatant discrimination" against the early retirees. They also objected to class counsel's request for $43.5 million in fees, which represented 24.17% of the total settlement. One of the other objectors was Mark Jackson, who argued that the settlement improperly released his unrelated claims against the Rohm and Haas disability plan and that he should have been allowed to opt out of the settlement. After briefing and an extensive fairness hearing, the district court approved the proposed settlement and awarded

the requested attorney's fees. Jackson was not allowed to opt out. The Adamski Objectors and Jackson appealed the settlement approval, and the Adamski Objectors also appealed the award of attorney's fees.

## II. ANALYSIS

### A. Settlement Approval

A district court must not approve a class action settlement unless it is convinced the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Before approving, the district court must scrutinize and evaluate the settlement. *See Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652-53 (7th Cir. 2006) (comparing the district court to a fiduciary of the class). Once the district court has approved the settlement, we review to determine whether the district court abused its discretion in doing so. *Mirfasihi v. Fleet Mortg. Corp.,* 450 F.3d 745, 748 (7th Cir. 2006).

### 1. Fairness to Early Retirees

The Adamski Objectors claim the district court abused its discretion in approving the settlement without calculating the net expected value of the litigation to the Class. A district court cannot make an informed judgment about the fairness of a proposed class settlement without assessing the likelihood and value to the class of the case's possible outcomes. *Synfuel*, 463 F.3d at 653. A district court must take special care in

performing this assessment when the proposed settlement evinces certain warning signs. *See, e.g., id.* at 654 (settlement bias toward in-kind compensation); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 785 (7th Cir. 2004) (large subset of the class receiving "a big fat zero" in settlement); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 283 (7th Cir. 2002) (evidence of collusion between defendants and class counsel).

The Adamski Objectors argue that the settlement at issue here evinces the same warning sign that was present in *Mirfasihi*: discrimination against a subset of the Class. We reject this comparison. In *Mirfasihi*, the proposed settlement would have extinguished 1.4 million (facially colorable) claims at no cost to the defendant. 356 F.3d at 783, 785. As we have noted in other contexts, even a weak claim may have significant settlement value when brought as a class action. *See Blair v. Fairfax Check Servs., Inc.*, 181 F.3d 832, 834 (7th Cir. 1999). Accordingly, when a settlement confers no benefit on a subset of the class, the district court should take special care to determine that the relevant claims actually have no settlement value. Here, the early retirees will receive $60 million, and every early retiree will receive a non-trivial amount. While the parties may quibble over whether $60 million accurately reflects the value of the early retirees' claims, the proposed settlement does not raise the same concerns as the "big fat zero" many class members were to receive in the proposed *Mirfasihi* settlement. 356 F.3d at 785.

We find that the district court adequately assessed the expected value of the early retirees' claims. The Adamski

Objectors' actuary concluded that the settlement gives early retirees about 24.3% of what they would have received had the COLA applied to their full lump sum and about 35.5% of what they would have received had the COLA applied to the portion of the lump sum based on a normal-retirement-age annuity. Class counsel, the Plan, and the Adamski Objectors all agreed (give or take) with these percentages. The only issue for the district court to decide, then, was whether the early retirees' litigation risks justified the compromise embodied by the proposed settlement.

The district court was well suited to decide that issue, and—having already heard the parties' arguments on the merits—it recognized that the early retirees' claims rested on unsettled law. The district court also knew that an appellate court would ultimately decide the relevant legal issues. The prospect of appellate review affects the risk and costs (in time and money) of the litigation.[1] Based on the evidence and arguments before it, the district court concluded that the early retirees' success was uncertain and that the settlement reasonably compensated them for their claims. That conclusion was not so clearly erroneous as to make approval of the proposed settlement an abuse of discretion.

---

[1] As the district court noted, the timing of recovery may be particularly important for this Class. While prejudgment interest may compensate plaintiffs for delayed payment, discount rates for pensioners can be tricky. *See* Richard A. Posner, *Aging and Old Age* 70-72 (1995).

Nor did the district court abuse its discretion by not creating a separately represented subclass of early retirees. The Adamski Objectors tried to convince the district court that *Mirfasihi* required separate representation for early retirees, but the district court disagreed and found that Class counsel had vigorously advocated on the early retirees' behalf.

We note that two subclasses already existed: the Past Subclass—of which the early retirees were part—and the Future Subclass. Moreover, other Class members argued that separate subclasses should be created to account for potentially different outcomes based on the statute of limitations. "[I]f subclassing is required for each material legal or economic difference that distinguishes class members, the Balkanization of the class action is threatened." John C. Coffee Jr., *Class Action Accountability: Reconciling Exit, Voice, and Loyalty in Representative Litigation*, 100 Colum. L. Rev. 370, 398 (2000); *see also UAW v. General Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007). The Adamski Objectors have not convinced us that the district court abused its discretion by finding that Class counsel had adequately represented the early retirees and that further subclasses were unnecessary.

### 2. Jackson's Opt-Out Request

Jackson argues that the district court should not have approved the settlement—without first allowing him to opt out—because it improperly releases his and similar claims against Rohm and Haas. Specifically, Jackson

argues that the settlement may prevent him from pursuing complaints about Rohm and Haas's disability plan. A facial reading of the settlement's release provision affects only claims relating to or arising out of the Rohm and Haas Company Retirement Plan, and Jackson has not offered any other reading of the provision to include the disability plan. Moreover, as the district court noted when discussing another class of objectors, opt out is usually inappropriate in this type of ERISA class litigation. *See Berger v. Xerox Corp. Ret. Income Guarantee Plan*, 338 F.3d 755, 763-64 (7th Cir. 2003). The district court did not abuse its discretion by denying Jackson's opt-out request and approving the settlement.

### B.  Attorney's Fees

When attorney's fees are deducted from class damages, the district court must try to assign fees that mimic a hypothetical *ex ante* bargain between the class and its attorneys. *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718-19 (7th Cir. 2001). The court must base the award on relevant market rates and the *ex ante* risk of nonpayment. *Id.* To determine the market for attorney's fees, the court should look to "actual fee contracts that were privately negotiated for similar litigation, information from other cases, and data from class-counsel auctions." *Taubenfeld v. AON Corp.*, 415 F.3d 597, 599 (7th Cir. 2005). "We review the district court's methodology de novo to determine whether it reflects procedure approved for calculating awards," and we review the reasonableness of the award for an abuse of discretion. *Sutton v.*

*Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (quotation marks omitted).

Apparently trying to insert their claims into *de novo* review, the Adamski Objectors conflate their methodological and substantive reasonableness arguments in their opening brief. We need not spend much time on the district court's methodology: the court recognized that its task was to assign fees in accord with a hypothetical *ex ante* bargain, *see Synthroid*, 264 F.3d at 718; it weighed the available market evidence, *see Taubenfeld*, 415 F.3d at 599; and it assessed the amount of work involved, the risks of nonpayment, and the quality of representation, s*ee Synthroid*, 264 F.3d at 721.

The Adamski Objectors claim the district court's methods were flawed because it did not give proper weight to the lodestar cross-check. But consideration of a lodestar check is not an issue of required methodology. *See Cook v. Niedart*, 142 F.3d 1004, 1013 (7th Cir. 1998) ("[W]e have never ordered the district judge to ensure that the lodestar result mimics that of the percentage approach."). Accordingly, we review the district court's application of the lodestar check for an abuse of discretion. *Id.*

The Adamski Objectors' lodestar argument—that any percentage fee award exceeding a certain lodestar multiplier is excessive—echoes the "megafund" cap we rejected in *Synthroid*. *See* 264 F.3d at 718 (reasoning that "[p]rivate parties would never contract for such an arrangement, because it would eliminate counsel's incentive to press for" a higher settlement). While the

district court did not impose a lodestar cap, it did consider Class counsel's lodestar data before assessing fees. It found, however, that a pure percentage fee approach best replicated the market for ERISA class action attorneys. The Adamski Objectors have not shown this finding to be an abuse of discretion.

The Adamski Objectors also take issue with the district court's weighing of the market evidence. Unfortunately, the parties did not present to the district court much evidence of the types we endorsed in *Taubenfeld* (private fee contracts, class-counsel auctions, and fee awards from other cases). While the Adamski Objectors did point to one class-counsel auction—from *In re Amino Acid Lysine Antitrust Litigation*, 918 F. Supp. 1190 (N.D. Ill. 1996)—*Synthroid* expressly criticizes the result of that auction, 264 F.3d at 720-21. The Adamski Objectors wisely ignore *Amino Acid* on appeal. The only useful pieces of evidence left for the district court, then, were the court-assigned fees in two other cases and the declarations of several class action attorneys.

The Adamski Objectors highlight the fee awards in *Kohl v. Ass'n of Trial Lawyers of Am.*, 183 F.R.D. 475 (D. Md. 1998), and *Laurenzano v. BCBS of Mass. Ret. Income Trust*, 191 F. Supp. 2d 223 (D. Mass. 2002). Though the fee award in each of these cases was based on a percentage of the recovery (29% in *Kohl* and 33% in *Laurenzano*), the Adamski Objectors report only the total dollar value of the fees. The percentage awards in these cases were consistent with the declarations, proffered by Class counsel, that reported the market rate for ERISA class

action attorney's fees is a contingency fee between 25% and 33%. The district court credited these declarations and gave minimal weight to the dollar amounts of the fees in *Kohl* and *Laurenzano*. This decision was well within the district court's discretion.

The Adamski Objectors' most forceful argument is that the district court improperly weighed the risk of nonpayment. They urge that rulings from district courts in other circuits paved the way for the Class's victory on the COLA issue, thus minimizing the risk in this case. *See Kohl*, 183 F.R.D. at 483; *Laurenzano v. BCBS of Mass. Ret. Income Trust*, 134 F. Supp. 2d 189, 200-01 (D. Mass. 2001). The prior decisions certainly bolstered the Class's argument that the Plan's damages calculation would violate ERISA. Still, no court of appeals had addressed this issue before the district court approved the settlement. And even if the Class had succeeded on that argument, many Class members' damages would have been at risk because of the statute of limitations.

The district judge has become intimately familiar with this litigation over the past eight years, and we are confident that she properly assessed the litigation risks facing the early retirees. Although the Adamski Objectors urge us to remand and instruct the district court to perform a more thorough risk analysis, we recognize that the best we can hope for in awarding attorney's fees is rough justice. *See In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 748 (7th Cir. 2011) ("[A] remand would produce only speculative refinements . . . and would do so at a heavy cost in judicial and party

resources unlikely to be offset by any benefit in greater precision, which would in any event be illusory."). Accordingly, we see no reason to disturb the district court's assessment of fees.

### III. CONCLUSION

We AFFIRM both the district court's approval of the settlement agreement and its award of attorney's fees.